# BILL COLBERT v. STATE.

### No. A-117.   Opinion Filed December 20, 1910.

1. **APPEAL—Jury—Challenges for Cause—Record—Showing of Injury.** Where there is nothing in the record to show that an incompetent, disqualified, or otherwise objectionable juror was forced upon the defendant, this court will not consider assignments of error based upon the rulings of the court upon a challenge for cause.

2. **EVIDENCE—Admissibility—Opinions.** Whether the defendant, at the time the crime was committed, was from his drunken condition unable to walk or get out of bed is a conclusion to be drawn by the jury from all the evidence before them, and not a matter of individual opinion or belief of the witnesses.

3. **APPEAL—Indorsement of Witnesses During Trial—Necessity of Injury.** Where the court or judge permits the prosecuting attorney to indorse the names of additional witnesses for the prosecution on the indictment or information at the trial of the cause, it will not be held to be reversible error by the Criminal Court of Appeals unless it clearly appears that it was prejudicial to the substantial rights of the defendant.

4. **WITNESSES—Indorsement of Names on Indictment—Necessity.** An objection to the testimony of a witness because his name is not indorsed on the indictment comes too late after the witness has been sworn and examined at length.

5. **INSTRUCTIONS—Sufficiency—Slight Inaccuracies.** Where a verdict is clearly sustained by the evidence, a new trial will not be granted for slight inaccuracies in the instructions.

(Syllabus by the court.)

*Appeal from District Court, Pittsburg County; Preslie B. Cole, Judge.*

Bill Colbert was convicted of conjoint robbery and sentenced to imprisonment for life, and he appeals.   Affirmed.

Plaintiff in error was, at the October, 1908, term of the district court of Pittsburg county, jointly indicted with John Jolly and Claude Colbert for the crime of conjoint robbery. Upon arraignment he entered a plea of not guilty and demanded a severance, which was granted.

The facts, as disclosed by the evidence, are substantially as follows: John White was assaulted, bound and gagged, and then robbed, at his home in Alderson, about the hour of nine o'clock in the evening of January 12, 1908. White testified that he was sixty-five years of age, a widower, worked on the section, and lived alone in his house at Alderson. That, on the night of the robbery, he was at home in bed sick when some one knocked at the door; he asked, "Who is there?" The answer was, "It is Bill Colbert"; that he arose and opened the door. That Bill Colbert and another man, both holding pistols in their hands, rushed in, and Colbert hit him on the head with a pistol, knocking him back on the floor; that they both then beat him with their pistols, took what money he had and then threw him on the bed and tied his hands and feet; that the man with Colbert then picked up a stick of wood and with a hatchet drove it into his mouth, knocking out several of his teeth. About the time they left a neighbor called and found White unconscious. He cut him loose and took the gag from his mouth. The defendant and his co-defendant, Jolly, were arrested the next morning. Jolly was taken to White's house and there identified by White as the man who, with Bill Colbert, robbed him. A part of White's money was then and there found concealed in Jolly's shirt and identified by White. He testified that he had never seen Jolly before, but that he had known Bill Colbert for three or four months; that Colbert called at his place nearly every day; that, on the morning before the robbery, Colbert called and asked for and received change for a ten dollar bill from him.

The defense interposed was an alibi, in support of which was offered the testimony of Colbert's wife, daughter and two sons-in-law. These witnesses, in substance, testified that Bill Colbert and John Jolly were at Colbert's house in Alderson on the evening of the robbery; that Jolly left about seven o'clock; that Bill Colbert was drunk, and went to bed and remained there until morning.

The judgment and sentence was entered on the 21st day of December, 1908, from which judgment an appeal was perfected

by filing in this court, on March 15, 1909, petition in error with case-made attached, and proof of service of notices of appeal.

*J. C. Harley* and *Mathews & Rosenwinkle,* for plaintiff in error.

*Charles West,* Attorney General, and *Smith C. Matson,* Assistant Attorney General, for the State.

DOYLE, JUDGE (after stating the facts as above). The petition sets forth thirty-seven assignments of error, less than one-half of which are argued in the brief.

The first assignment is:

"That the court erred in overruling the defendant's challenge for cause to the juror, Grace."

The *voir dire* examination of the juror, John Grace, is the only part of the proceedings had in connection with the selection of the jury to try the case that is contained in the case-made. It is not shown that the defendant exercised or exhausted his peremptory challenges. The record proper shows that said Grace was not a member of the trial jury. There is nothing in the record to show that an incompetent, disqualified or otherwise objectionable juror was forced upon the defendant.

"The law nowhere says that he can not and shall not use his peremptory challenges on a disqualified or incompetent juror; on the contrary, he may do so, or not, just as he sees fit. If he does so, he has excluded the juror, and his objection is of no avail. If he does not, then he waives his objection and can not complain, unless he has shown the exercise of all his peremptory challenges, and that he has had an objectionable juror put upon him, whom he could not get rid of." (*Turner v. State, ante,* 111 Pac. 98.)

The second is based on an alleged improper statement of counsel for the state in his opening statement. No argument is made, and no authorities are cited in the brief in support of this assignment. Hence, under the rules of this court, it will be deemed waived and abandoned.

The assignments of error from the third to the eighteenth, inclusive, are based upon rulings of the court on the admission and rejection of testimony. We have carefully examined the rec-

ord, and it is our conclusion that these assignments, with one possible exception, are without merit. To illustrate, it is alleged:

"That the court erred in refusing to permit witness, Carry Brown, to testify as to whether, judging from the drunken condition of defendant on the night he is charged with robbing prosecuting witness, this witness believed he was able to walk or get out of bed at the time she went to bed, which was about the time the robbery is alleged to have been committed."

The witness, testifying, stated that she was the daughter of the defendant, and was at his home on the night in question with her husband; that defendant came home that evening about sundown; that John Jolly was with him; that defendant was drunk and soon went to bed, and that witness went to bed about nine o'clock. Witness was then asked: "Q. At the time you went to bed, judging from the condition of your father—you have already testified he was drunk—but, from his drunken condition, do you believe that he was able to walk or get out of bed at the time you went to bed?" The question called for an opinion, which was clearly inadmissible. It is a well known general rule that witnesses are not to give their individual opinions, or state their conclusions, when the jury are equally competent as to such matter to form the opinion or deduce the conclusion sought from the facts. The question asked went to the merits of the whole case. There is no appreciable difference between the opinion asked for and a request for the witness's opinion as to whether the alibi was proved. The court properly sustained the objection.

The only serious proposition is presented by the assignment:

"That the court erred in overruling the objection of the defendant to allowing witness, Chaney Haynes, to testify for the state, for the reason that said witness's name was not indorsed on the indictment at any time prior to the commencement of the trial, and had not yet been indorsed on the indictment, or notice given to defendant that said witness would be used until said witness was called upon the witness stand to testify, and because no list of witnesses containing the name of this witness was served upon defendant To which the defendant in open court excepted, together with a statement of the court in the presence of the jury."

One Chaney Haynes was called as a witness for the prosecution, and after answering several questions, counsel for the defendant objected to the witness further testifying "because his name was not included in the list of witnesses served on us." The prosecuting attorney stated that: "This morning, and since this trial began, I learned that this party is a witness in this case." Whereupon the court overruled the objection. The examination of the witness was resumed. Whereupon the following objection was made:

"The defendant objects to that question or any other questions being asked this witness, for the reason that the name of this witness is not indorsed at this time, and has not been, up to this time, indorsed on the indictment as a witness in this case, and for the further reason that the name of this witness, together with others, has never been served upon the defendant, as is by law required."

The Court: "No list of witnesses served on the defendant, Mr. Dean?"

Mr Dean: "That is only in capital cases."

The Court: "Objection overruled. Exceptions allowed."

The record discloses that the court later made the following order: "Make a *nunc pro tunc* order allowing the indorsement of Chaney Haynes' name on the back of the indictment."

Section 20 of the Bill of Rights provides:

"Sec. 20. In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, That the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

Under the constitutional provision the requirement is that,

in capital cases only, a list of the witnesses to be called in chief, together with their postoffice addresses, shall be served at least two days before trial on the defendant. In all other cases the only notice required is that given by the list of names indorsed upon the defendant's copy of the indictment, except that, should the court or judge direct the names of additional witnesses to be indorsed on the indictment, a further order shall be made requiring such names to be furnished to the defendant or his counsel, as required by statute. Section 6591, Snyder's Statutes, provides:

"When an indictment is found, the names of the witnesses examined before the grand jury must be indorsed thereon before the same is presented to the court, but a failure to so indorse the said names shall not be sufficient reason for setting aside the indictment if the county attorney or prosecuting officer will, within a reasonable time, to be fixed by the court, indorse the names of the witnesses for the prosecution on the indictment. The court or judge may, at any time, direct the names of additional witnesses for the prosecution to be indorsed on the indictment, and shall order that such names be furnished to the defendant or his counsel."

The manifest object of these requirements is to inform the defendant upon whose testimony the indictment has been found and upon whose testimony the state in chief relies to secure a conviction, so that he may know what evidence he may reasonably expect to be offered against him; this in order that he may prepare to make his defense. Permitting the prosecution to indorse the names of additional witnesses upon the indictment "is a matter resting entirely within the sound discretion of the trial court, and, unless it clearly appears that it was an abuse of discretion, and that it was prejudicial to the substantial rights of the defendant, we cannot say that it is reversible error." *Hyde v. Territory of Oklahoma,* 8 Okla. 69. When the names of additional witnesses are to be indorsed the proper practice is to serve a written notice containing such names upon the defendant or his counsel. *Vance v. State,* 3 Okla. Cr. 208, 105 Pac. 307. It appears from the record in this case that the objection to the testimony of the witness Haynes was not seasonably made. When the objection was

interposed the prosecuting attorney stated that he had only learned since the trial began that Haynes was a material witness. The testimony of this witness was merely cumulative, and there was no claim either in support of the objection or on the motion for a new trial that the defendant was misled or surprised by reason of this testimony. As we view the record, it shows a substantial compliance with the requirements of the statute. Our conclusion is that the ruling of the court was not prejudicial to the substantial rights of the defendant.

The remaining assignments relate to instructions requested and refused and the instructions given. The court fully instructed the jury and we deem it unnecessary to encumber this opinion with the instructions. There were five instructions requested by counsel for defendant, and the only one not covered by the instructions given was:

"That if this defendant, Colbert, is convicted, the punishment will be life imprisonment."

The court instructed that:

"The question of the time that the defendant is to be imprisoned in the event of his conviction should not influence or affect the jury one way or the other in arriving at a verdict, as that is a matter that does not concern a jury under the law and the evidence in this case."

Section 2217, Wilson's St., provided:

"Whenever two or more persons conjointly commit a robbery, or where the whole number of persons cojointly committing a robbery, and persons present and aiding such robbery, amount to two or more, each and either of such persons is punishable by imprisonment for life."

Under this provision, in force when this case was tried, the law fixed but the one punishment; there was nothing for the jury to determine except the guilt or innocence of the accused, and the court properly refused the instruction requested.

Counsel for defendant insist that the court erred in the instruction given in reference to the defense made of an alibi. While we are not prepared to approve the form of the instruction, yet we believe that it fairly stated the law. The court said:

"If, in view of all the evidence, the jury has a reasonable doubt as to whether the defendant was at some other place when the offense was committed, they should give the defendant the benefit of the doubt; and if it leaves in the minds of the jury such a doubt or uncertainty that, if taken by itself, they cannot find for or against the alibi, they are bound to carry such a doubt into the case of the prosecution and to array it there as an element of reasonable doubt beyond which the prosecution must establish guilt."

The jury was, by this instruction, directed that, if the evidence of an alibi raised a reasonable doubt in their minds as to the defendant's guilt, they should acquit him. Neither does it appear that the jury were instructed upon the weight of the evidence.

In view of the clear and convincing character of the evidence offered on the part of the prosecution, there can be no doubt as to the guilt of the defendant in this case. From a consideration of all the assignments of error, and from a careful examination of the record, we are convinced that the defendant has had a fair and impartial trial, and that no error prejudicial to his substantial rights is shown by the record.

The judgment of the district court of Pittsburg county is therefore affirmed.

FURMAN, Presiding Judge, and RICHARDSON, Judge, concur.