## JOHN COLLINS v. STATE.

No. A-2980.    Opinion Filed October 7, 1918.

(175 Pac. 124.)

1. **CONTINUANCE—Discretion of Court—Absent Witnesses.** An application for a continuance on account of absent witnesses is addressed to the discretion of the trial court, and a judgment of conviction will not be disturbed because the trial court overruled such a motion, unless there appears to have been a manifest abuse of discretion.

2. **SAME.** Application and motion for a continuance and evidence in support thereof examined, and **held**, no abuse of discretion shown in overruling the same.

3. **JURY—Excusing Juror—Bias—Review on Appeal.** Where the trial court on challenge by the state excuses a juror because of bias in favor of one of the defendants jointly on trial, and also because of his intimate acquaintance with the family of such defendant, his action in so doing was a matter of discretion, and unless there appears to have been an abuse of discretion on the part of the trial court, which operated to the prejudice and injury of the appellant, the judgment of conviction will not be set aside.

4. **APPEAL AND ERROR—Prejudice—Burden of Proof.** Before this court is authorized to reverse a judgment of conviction, the burden is upon the appellant to show that error was committed in the trial prejudicial to his substantial rights.

5. **WITNESSES—Competency—Discretion of Court.** The question of the competency of a witness under ten years of age is a matter addressed peculiarly to the discretion of the trial court.

6. **SAME—Testimony of Infant.** Where no abuse of discretion appears in permitting a witness under ten years of age to testify in behalf of the state, this court is not authorized to reverse a judgment of conviction upon that ground.

7. **EVIDENCE—Expression of Opinion.** Upon the trial, a deputy sheriff, who arrested this defendant some five or six hours after the alleged crime had been committed, was permitted to testify that at the time of such arrest, the defendant was intoxicated. **Held**, that an objection to such testimony upon the ground that it was error to permit the said officer to express his opinion as to the intoxicated condition of the defendant is not well founded.

8. **APPEAL AND ERROR—Objections by Codefendant.** Where two or more persons are being jointly tried and certain evidence applicable to only one of such defendants is admitted without objection or exception by either of the other defendants, it is too late, after conviction, for one of said defendants to whom such evidence was not applicable to first urge that the court erred in admitting such testimony as to him.

9. **EVIDENCE—Expert Evidence—Firearms.** The subject of firearms and the size of bullets shot by different kinds of pistols is a proper subject upon which to permit a qualified person to express an opinion, where such opinion is material to the issues involved in the trial.

10. **APPEAL AND ERROR—Remarks of Prosecuting Attorney—Failure to Object—Review.** Where certain remarks of the county attorney in argument to the jury are not such as are made grounds for reversal by statute, and there was no motion to exclude such remarks from the consideration of the jury, nor any ruling of the trial court adverse to the defendant to which an exception was saved at the time, there is no question presented for this court to consider.

11. **EVIDENCE—Proof of Motive.** Proof of motive, while not indispensable, is always permissible where the intent of the defendant in the commission of the act is at issue.

12. **HOMICIDE—Indictment and Information—Conspiracy—Instructions—"Principals."** In a prosecution for homicide alleged to have been committed by two or more persons, it is not necessary for the indictment, or information, to charge a conspiracy to commit murder. All persons concerned in the commission of crime in this state, whether they directly committed the act, or aid and abet in its commission, though not present, are "principals," and they may be indicted, or informed against, and tried as such. Under such an indictment, or information, where the proof would tend to sustain the inference that a conspiracy existed between the said principals to commit the alleged crime, it was appropriate for the trial court to give an instruction upon the subject of conspiracy to murder.

13. **APPEAL AND ERROR—Instructions—Harmless Error.** Instruction on conspiracy to murder examined, and **held** clearly harmless as to this defendant under the facts of the case.

*Appeal from District Court, Pittsburg County;*
*Ernest B. Hughes, Assigned Judge.*

John Collins was convicted in the district court of Pittsburg county of the crime of murder, and sentenced to

imprisonment in the penitentiary for life, and appeals. Judgment affirmed.

Samuel Corbin was killed on the 14th day of July, 1916, at his little store near Cole's Crossing on the Wilburton branch of the Missouri, Kansas & Texas Railroad in Pittsburg county, Okla. The building was located a short distance from the south side of the railroad on a little hill and faced north. Corbin lived there alone and conducted a small grocery and supply store. He was a man of some means and had some personal property at said place. His nearest neighbor was the family of Ed Gonzales, who lived at a section house on the railroad about a hundred yards from the store, which section house was on the south side of the railroad, but north of Corbin's place in plain view.

The defendant John Collins, together with his brother, Charlie Collins, and Elmer Freeman, was seen on the afternoon before the killing, which occurred about dusk, at a store managed by Mr. Vance Long at the little village of Carbon, a short distance from Cole's Crossing. Several witnesses saw them at this store in the afternoon, and positively identified the defendants as the parties who were seen there. The defendants were also identified by other parties who saw them in the vicinity of the place where this crime was committed at different times during the afternoon of the day on which the crime was committed.

Some of the family of Ed Gonzales, just a few minutes before the killing took place, saw the three defendants at the Gonzales' home and saw the defendant John Collins with a gun or pistol; testifying that John Collins asked, "Is that man up there at the store now?" and was informed that they "didn't know whether he was up there or not." That the three defendants were then seen immediately to go up to the store of the deceased. That when they got to

the store they opened the door without knocking and went in. That in a few minutes gunshots were heard up in that direction, which attracted the attention of those at the Gonzales home, and they saw the defendant John Collins fire the last shot as he stepped out of the door of the deceased's store. That Charlie Collins and Elmer Freeman rushed out of the door ahead of John Collins, and went away and waited for John. The three were then seen starting down a lane in the direction of Haileyville, the home town of the defendants. That a Mr. Rogers started out in pursuit of the defendants, tried to head them off, and was shot at by one of the defendants. That the place where the deceased was killed was a rather lonely spot, and the country surrounding the place was not thickly settled. That Dr. Turner, who was called to attend the deceased after the shooting, reached there before the deceased died, and the deceased told Dr. Turner that he (deceased) was in a dying condition; that three men came in his store and asked for something to eat, and deceased told them he did not have anything to eat; and that, without another word, they opened fire on him with their guns.

The deceased died shortly thereafter. The defendants were arrested a litle after midnight of the night after the killing at the town of Haileyville. Charlie Collins was found at his home, and John Collins and Elmer Freeman were found together in another house. Charlie Collins and John Collins both had pistols in their possession at the time of their arrest, John Collins' pistol being concealed under the covers in the bed in which he was sleeping.

The defense interposed was an alibi, the defendants claiming to have been in and around Haileyville during the entire day and evening of the 14th of July, 1916, and

having several witnesses to support their theory of defense.

*W. N. Redwine* and *Marianelli & Exendine*, for plaintiff in error.

*S. P. Freeling*, Attorney General, and *R. McMillan*, Assistant Attorney General, for the State.

MATSON, J. (after stating the facts as above). It is first contended that the trial court erred in overruling defendant's motion for a continuance on account of the absence of Jack Benson and Jim McKinney, two witnesses for the defendant whose testimony is alleged to have been material, in that it would have tended to establish the alibi, the defense interposed in behalf of defendant.

The case was first set for trial on the 2d day of October, 1916, at which time the motion for a continuance was interposed, and at that time the case was continued until the 12th day of October, 1916, in order to give the defendant time to procure the attendance of these witnesses and also to have the benefit of the services of Mr. Redwine, the chief counsel of the defendant, who was suffering from a slight illness on October 2d. On the 11th day of October, the defendant renewed his motion for a continuance on account of the absence of these witnesses, and alleged in said motion that he had diligently tried to obtain their presence, or testimony, but that he was unable to locate them; that the witness James McKinney had enlisted in the United States army, and his whereabouts were unknown at that time; and that the witness Benson was supposed to be located somewhere in Arkansas, but that the defendant was unable to learn his present post office address.

Applications for a continuance are addressed to the discretion of the trial court, and it has been repeatedly held by this court that a judgment of conviction will not be disturbed because a trial court overruled an application for a continuance on account of absent witnesses, unless there appears to have been a manifest abuse of discretion. Also, it has been held by this court that applications for a continuance are to be strictly construed against the applicant. They cannot be aided by inference or presumption. The presumption will be entertained in this court that the application states the facts of the case relied upon in the strongest light possible in favor of the defendant. *Rhea v. Ter.,* 3 Okla. Cr. 230, 105 Pac. 314; *Davis v. State,* 10 Okla. Cr. 174, 135 Pac. 438; *Sayers v. State,* 10 Okla. Cr. 239, 135 Pac. 1073; *Petty v. State,* 11 Okla. Cr. 438, 147 Pac. 782; *Morehead v. State,* 12 Okla. Cr. 62, 151 Pac. 1183, Ann. Cas. 1918C, 416.

In overruling the motion for a continuance, the trial court used the following language:

"There isn't any showing here at all that there is any prospect of getting these witnesses here who are out of the jurisdiction of the court, none whatever, and no attempt to be made. There is absolutely no assurance to this court that the attendance of these witnesses can be had at a subsequent day of this term or at a subsequent term of this court."

The remarks of the trial judge in overruling the motion for a continuance state the truth. Continuance on account of absent witnesses should never be granted merely for delay, but only in order to obtain for the defendant material testimony in his behalf.

As it is apparent from the face of the application, and from the testimony of witnesses in support thereof,

that there was no reasonable possibility of obtaining the attendance of the absent witnesses at the next term of court or at a later day in the same term, there was no abuse of discretion on the part of the trial court in overruling the motion. The burden is upon the defendant to show a reasonable probability that the attendance of the absent witnesses may be obtained by the granting of the continuance, or, where the witnesses are absent from the state, that their whereabouts may be discovered and depositions taken before the next term of court.

In this case, a continuance was allowed for ten days, and at the end of that time the defendant was just as much in the dark as to the whereabouts of these witnesses as he was at the time he first filed his application. The crime was committed in July, 1916, and the trial was not had until October. These absent witnesses lived in Haileyville, Okla., at the time of the comimssion of the alleged crime, and Haileyville was also the home of the relatives of the defendant, and, had reasonable diligence been exercised, it is apparent that closer touch would have been kept of witnesses whose testimony was considered important and necessary in the defense. It may also be noted that it is set out in the application that the testimony of these witnesses is cumulative of the testimony of other witnesses who were present at the trial, and testified in the behalf of the defendant, so that, viewing the application of the court's action in overruling the same from every standpoint, it is apparent that there was no abuse of discretion.

During the progress of the trial, the court excused on challenge by the state the juryman Noble. Upon his *voir dire* examination, this juryman said that he had been an old acquaintance of one Freeman, and the family of said Freeman, a codefendant, jointly on trial, and that his

acquaintance with the said Freeman and Freeman's family and friendship for the family would likely bias him in favor of Freeman, and for that reason, although he knew nothing about the facts of the particular case, he would like to be discharged from the jury.

Whether or not the juryman, under the circumstances stated, should have been permitted to sit in the trial of the case, was a discretionary matter with the trial court. See subdivision 2, section 5858, Revised Laws 1910. The court's action is not shown to be prejudicial to this defendant in any way.

It is also contended that the court erred in overruling the defendant's challenge to the juryman Cochran, because on his *voir dire* examination the juror stated that if a situation should arise in the case where an acquaintance in whom he placed confidence and knew to be trustworthy testified to one state of facts, and a stranger testified to another state of facts contradictory thereto, he (Cochran) would be inclined to believe the acquaintance in preference to the stranger, and for that reason it is contended that because Cochran was an acquaintance of certain officers who testified in this case, and was a stranger to the defendant and some of his witnesses, the said juror should have been discharged. The grounds urged constitute none of the statutory disqualifications of a trial juror. In the absence of any showing of disqualification, this court cannot hold that the defendant was prejudiced because the juror Cochran sat upon the jury in the trial of the cause. Before the court is authorized to reverse a judgment of conviction, the burden is upon the appellant to show that error was committed prejudicial to his substantial rights.

The next assignment of error relates to the action of the trial court in permitting one Nolie Scruggs to testify as a witness on behalf of the state. The said Nolie Scruggs was at the time of giving her testimony about nine years of age. This question also is one peculiarly within the discretion of the trial court. We have examined the record, both the *voir dire* examination into the competency of this witness, and also the record of the testimony of the witness concerning the facts of the case; and we see no abuse of discretion in permitting this witness to testify. She seemed to be capable of receiving just impressions of the facts respecting which she was examined, and of relating them truthfully. This is the statutory test of competency of witnesses under ten years of age. *Darnell v. State,* 14 Okla. Cr. 540, 174 Pac. 290, and cases there cited.

It is also contended that the court erred in permitting a deputy sheriff, who arrested this defendant some five or six hours after the alleged crime had been committed, to testify that, at the time of such arrest, it was the impression of the witness that the defendant had been drinking. The objections urged go not to the relevancy of the testimony, but are that the impression or opinion of the officer as to intoxication of the defendant was inadmissible. We think the objections urged to be without merit. Intoxication may be proved by the opinion of witnesses. *Stuart v. State,* 38 Tex. Cr. R. 627, 44 S. W. 505; *Pace v. State,* (Tex. Cr. App.) 79 S. W. 531; *State v. Dolan,* 17 Wash. 499, 50 Pac. 472; *Dozier v. State,* 130 Ala. 57, 30 South. 396. The case of *Colbert v. State,* 4 Okla. Cr. 500, 113 Pac. 558, does not support the contention of counsel for plaintiff in error that a witness may not be permitted to give an opinion as to the intoxicated condition of a person. It appears from the body of the opinion in that case that the

witness was permitted to testify that the defendant was drunk, but this court held that such witness should not be permitted to further testify and give opinion, judging from the drunken condition of the defendant, whether or not he was able to walk, etc. A clear distinction is made between permitting a witness to testify as to the intoxicated condition of the defendant, and permitting the opinion of such witness to be given as to whether or not the defendant was so intoxicated as in the opinion of the witness to preclude his having committed the crime charged; that being the ultimate fact to be determined by the jury.

Another objection that is clearly without merit relates to a certain conversation that the deputy sheriff, Larrison, had with Mrs. Charlie Collins in the presence of the co-defendant Charlie Collins at the time and just before the said Charlie Collins was arrested, relative to the whereabouts of Charlie Collins on the day the killing took place. This evidence was clearly competent as to Charlie Collins, who was jointly being tried, and was admitted without objection and exception on the part of either of his co-defendants. The substance of Mrs. Charlie Collins' testimony relative to the whereabouts of her husband on the day of the homicide, even had it been objected to and been improperly admitted, had no reference to this defendant and was in no way prejudicial to him. We see no merit, therefore, in this assignment of error. *Bartel v. State,* 4 Okla. Cr. 135, 111 Pac. 669; *Ford v. State,* 5 Okla. Cr. 241, 114 Pac. 274; *Steward v. State,* 9 Okla. Cr. 327, 131 Pac. 725.

It is also contended that the court erred in permitting the witness T. C. Collier, sheriff, to testify over the objection of defendant in regard to a certain bullet which was found in the body of the deceased, and in permitting said

Collier to compare the same with a bullet taken out of a shell which was found in a pistol in the bed where this defendant was sleeping at the time of his arrest. We think this evidence was proper. An issue was raised as to the size of the bullet found in the body of the deceased, whether or not it was a 38-caliber or a 41. Some evidence had been introduced to the effect that the bullet found in the body of the deceased was a 38-caliber bullet. The gun found in the bed of the defendant was a 41-caliber, and the sheriff was permitted to compare a bullet taken from a shell found in said gun, with the bullet found in the body of the deceased, and, after having properly qualified as an expert in the use of pistols, he was permitted in the presence of the jury to compare said bullets, and to express his opinion that they were of the same caliber.

The subject of firearms and the size of bullets shot by different kinds of pistols is not a subject upon which the ordinary layman would be qualified to express an opinion; but this witness, having been a peace officer for many years, and having shown himself to be familiar with the use of firearms and the manner in which the same were loaded, and also with the different kinds of cartridges and bullets used in various kinds of firearms, was qualified, after a comparison of the same, to give, in our opinion, as an expert, his opinion as to whether or not the bullets introduced in evidence were of the same size. The bullets themselves were permitted to be introduced in evidence, and this character of demonstrative evidence is always permissible where material to the issues, and in this case we think it clearly established that the evidence was material. 8 R. C. L. section 173; *Crawford v. State,* 112 Ala 1, 21 South. 214; *State v. Laudano,* 74 Conn. 638, 51 Atl. 860.

Certain remarks of the county attorney to the jury in argument are complained of. An examination, of the record fails to disclose that the defendant moved that they be excluded from the consideration of the jury, or that the trial judge made any ruling concerning such remarks, to which the defendant objected and saved an exception. The remarks incorporated in the case-made are not such as should cause a reversal of this judgment in the absence of any adverse ruling of the trial court thereon. Counsel for defense should have moved the court to exclude the remarks and, if the court failed to do so, should have saved an exception to such ruling. In the absence of any ruling by the trial court or exception thereto, there is nothing for this court to consider. *Tucker v. State,* 9 Okla. Cr. 587, 132 Pac. 826; *Johnson v. State,* 5 Okla. Cr. 13, 113 Pac. 552; *Williams v. State,* 4 Okla. Cr. 523, 114 Pac. 1115.

It is also contended that the court erred in permitting a witness to testify that the deceased at the time he was killed was possessed of a very valuable diamond ring, and had other personal property on the premises where the killing occurred. We think this evidence is competent as tending to show that the motive for the killing may have been robbery. While proof of motive is not indispensable, yet it is always permissible where intent in the commission of the act is at issue. *State v. Hembree,* 54 Or. 463, 103 Pac. 1008; *People v. Grow,* 16 Cal. App. 147, 116 Pac. 369.

Another assignment of error urged in the brief of counsel for defendant, and vigorously presented in oral argument as grounds for reversal of this judgment, relates to instruction No. 6, given by the court over the objection and exception of the defendant, which instruction is as follows:

"The court instructs the jury that where two or more persons combine or conspire together by some concert of action, to accomplish some criminal or unlawful purpose or some purpose not in itself criminal or unlawful by criminal or unlawful means, then such combination is what is known in law as a conspiracy to commit crime. The court instructs the jury as a matter of law that while it is necessary, in order to establish a conspiracy, to prove a combination of two or more persons by concert of action, to accomplish the criminal or unlawful purpose alleged in the information, yet it is not necessary to prove that the parties ever came together and entered into any formal agreement or arrangement between themselves to effect such purpose. A combination or common design or object may be regarded as proved if the jury believe from the evidence beyond a reasonable doubt that the parties charged were actually pursuing, in concert, the unlawful object stated in the information, whether acting separately or together, by common or different means, provided all were leading in the same unlawful result, and if two or more persons, moved and influenced by a common intent and purpose to feloniously assault another with a deadly weapon and to take his life or to commit such felony upon such person, then the law says that under such circumstances the act of one is the act of all assailants and the shot of one is the shot of all; they are all responsible, under such circumstances, for the acts of each other."

It is contended that this instruction is erroneous because the information does not charge the defendants with the conspiracy to commit murder, nor does the testimony anywhere tend to prove a conspiracy on the part of this defendant, or his codefendants. It is not necessary for the indictment or information to charge a conspiracy. Under our statutes:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and

abet in its commission, though not present, are principals."
(Section 2104, Revised Laws 1910.)

They may be indicted and tried as such. *Drury v.
Ter.*, 9 Okla. 398, 60 Pac. 101.

The information in this case jointly charged this defendant, with his brother, Charlie Collins, and one Elmer Freeman, directly with committing the murder of one Samuel Corbin. Under such a charge, where the proof would tend to sustain the inference that a conspiracy existed between the said principals to murder, it was appropriate for the court to give an instruction to that effect, and the theory of the state in this case, and the evidence in support thereof was sufficient to authorize the jury to reach the conclusion that a conspiracy did exist between these parties jointly charged to kill and murder the said Corbin. But it is apparent, from an examination of the evidence in this case, that the jury wholly disregarded the conspiracy theory, else Charlie Collins and Elmer Freeman would also have been convicted. But in view of the fact that Charlie Collins and Elmer Freeman were acquitted and John Collins alone was convicted, and the eyewitnesses to the tragedy testify that John Collins was seen to fire shots at the deceased after Charlie Collins and Elmer Freeman were seen to run away from the scene of the tragedy, it is clear that this defendant was convicted because the jury believed that he was the person who "directly committed the act constituting the offense," and that Charlie Collins and Elmer Freeman did not conspire with him in its commission.

The evidence on the part of the state clearly indicates that the fatal shots were fired by John Collins independent of any collusion or concert of action on the part of his co-defendants, and it would be a plain miscarriage of justice

to reverse this case as to John Collins because the court gave the foregoing instruction relative to conspiracy, as such instruction was clearly harmless as to John Collins. It is well established in this state that an error in the instructions of the court will not be considered reversible unless it appears from the record that the defendant was injured thereby. *Boswell v. State,* 8 Okla. Cr. 152, 126 Pac. 826; *Ostendorf v. State,* 8 Okla. Cr. 360, 128 Pac. 144.

Other assignments of error are urged as ground for reversal of this judgment; but upon a thoughtful and careful examination of the record, and after a thorough and able presentation of the case by counsel, the conclusion is reached that the errors complained of are such as heretofore have been decided by this court adversely to the contentions of the defendant's counsel.

The evidence in this case is amply sufficient to support the verdict and judgment. Defendant was ably represented in the court below and had a fair and impartial trial according to the forms of law.

The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.