Billy Joe **SILVERHORN**, Plaintiff in Error,

v.

**STATE** of Oklahoma, Defendant in Error.

No. A–12950.

Court of Criminal Appeals of Oklahoma.

Dec. 21, 1960.

Sam L. Wilhite, Anadarko, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Billy Joe Silverhorn, hereinafter referred to as the defendant, was charged by information in the District Court of Caddo County with committing the offense of furnishing alcoholic beverage to a minor. Defendant was tried before a jury who found the defendant guilty and set his punishment at one year in the Oklahoma State Penitentiary and recommended the sentence be suspended.

The defendant appeals to this court upon four assignments of error contending that the court erred:

1. Error of the court in overruling defendant's demurrer to the evidence and in overruling defendant's motion for a directed verdict.

2. Error of the court in giving instruction number 4.

3. Error of the court in permitting the testimony of the arresting officers that defendant was intoxicated but appeared to know what he was doing.

4. That the verdict of the jury was cruel and excessive.

In order to discuss the issues involved it is necessary to briefly relate upon which the charge was filed.

Billy Joe Silverhorn, the defendant, was approached by his cousin Otis Saddle Blanket, a minor, who asked the defendant to purchase for him a bottle of Gallo wine. The defendant, who evidently was drunk after borrowing a dime from his minor cousin, agreed to purchase the wine. Defendant was given a dollar by his cousin and was directed to the liquor store where the wine was purchased. He returned and handed the bottle in a sack to the minor. A matron at the Riverside Indian School happened to see the transaction. Saddle Blanket was a student at the Riverside School. She took the student and the

bottle of wine to the police station and reported the incident to the officers. The officers proceeded to arrest the defendant, brought him to the police station and charged him with the charge of public drunk. Subsequent thereto defendant was charged in the case at bar with furnishing alcoholic beverage to a minor.

At the conclusion of the state's evidence, defendant demurred and asked for a directed verdict. It is the contention of defendant that the testimony did not establish that defendant furnished liquor to the minor as defined by law. He cites as authority for his interpretation of the word "furnish" the case of Rhodes v. State, 30 Okl.Cr. 2, 234 P. 645, 647, where the Court said:

"To furnish is to provide or supply anything ordered by another, and *necessarily carries with it the idea of ownership, property in, or dominion over the thing furnished by the one who furnishes* [*it*]."

Defendant contends that the evidence in the instant case refutes any idea of ownership, property in or dominion over the liquor on the part of defendant. The court is unable to follow defendant's reasoning in this respect. The statute provides in Tit. 37 § 537 that:

"(a) No person shall:

"(1) Knowingly sell, deliver, or furnish alcoholic beverages to any person under twenty-one (21) years of age."

The statute apparently was created to prohibit such incidents as the one depicted here. Whether or not the acts of the defendant constitute furnishing alcoholic beverages to one under 21 has been passed upon in numerous jurisdictions. The court cites for example, the case of Burnett v. State, 92 Ga. 474, 17 S.E. 858, where the Supreme Court of Georgia said:

"Section 4540a of the Code, which makes it penal to furnish intoxicating liquors to a minor, is violated by a person who receives money from a minor with which to procure and pay for such liquor, and, at the minor's request, purchases and delivers it to him."

Also see Jackson v. State, 16 Ga.App. 213, 84 S.E. 974.

■ Though Oklahoma has not as yet passed upon the identical question, the weight of authority gleaned from other jurisdictions appears to be adverse to defendant's theory of the law.

Defendant next complains that the court erred in giving instruction No. 4 to the jury. Instruction No. 4 followed the exact wording of the statute:

"The court instructs the jury that the statutes of the State of Oklahoma provides that no person shall knowingly sell, deliver, or furnish alcoholic beverages to any person under 21 years of age."

The statute of the state further provides that any person who knowingly sells, furnishes, or gives alcoholic beverages to a person under 21 years of age shall be deemed guilty of a felony, and shall be fined not more than $5,000 or imprisonment in the state penitentiary for not more than 5 years, or both such fine and imprisonment.

■ Defendant's complaint arises from the fact that the information charges defendant as follows:

" * * * that he did then and there, intentionally, unlawfully, wilfully and feloniously and knowingly *furnish* alcoholic beverages to Otis Saddle Blanket, a person under 21 years of age * * *"

Defendant argues that the defendant was charged with "furnishing", not selling or delivering. Therefore, it was error to instruct on delivery, which enabled the jury to find defendant guilty if he delivered it to the minor. The court fails to see the merits of this argument. The words furnish and deliver are of such similarity and are synonymous to the extent we fail to see how harm could arise from using them interchangeably. There could hardly be a furnishing without a delivery nor a delivery without a furnishing. In the case of People v. Joy, 30 Cal.App. 36, 157 P. 507 headnote 3 reads:

"The word 'furnish' is used in St. 1911, p. 602, § 13, prohibiting a furnishing of alcoholic liquors in certain territory, means to supply, to offer for use, to give, or to hand."

A review of the whole record reveals sufficient testimony to support the conviction as to furnishing alcohol to a person under 21. The instructions were in the exact language of the statute. Instruction No. 5 clearly explains to the jury that defendant was charged with *furnishing* alcohol to a person under 21 and properly explained the law applicable thereto. To approve defendant's theory in this regard would be using a technicality to abort the law. The record does not show an objection to the instruction. No instructions were offered on the part of the defendant. No exceptions were saved. This court has held in cases too numerous to cite that where no objection is taken to the instructions this court will examine the instructions only for fundamental error. See Green v. State, 70 Okl.Cr. 228, 105 P.2d 795. Certainly the error complained of is not of that nature.

Defendant contends that the court erred in permitting three police officers to testify that the defendant, while at the police station after his arrest, appeared to them to know what was going on. Defendant contends that their answers, over his objection were conclusions and prejudicial to the defendant. An example of the contention is reflected by the testimony of Officer D. G. Bacon on page 36 of case made:

"Q. Alright, what was the defendant's condition? A. He was pretty well intoxicated, and he was filed on in the police department as a public drunk.

"Q. Was there any disposition of that charge? A. No, there wasn't.

"Q. For what reason? A. The next morning after the folks at Riverside filed on Billy Joe he was released to the county.

\*    \*    \*    \*    \*    \*

"Q. Now, I would like for you to tell the court and jury whether the defendant appeared to you to be too drunk to know what he was doing or what was going on at that time.

"Mr. Wilhite: If the court please, that is calling for a conclusion."

The objection was overruled, exception allowed, then witness proceeded with the following answer:

"Billy Joe was pretty intoxicated, yes, sir, but I wouldn't think he was that intoxicated to not know what he was doing."

Defendant urges this as a grounds for reversal as such expression of the officer's opinion was a conclusion prejudicial to the defendant. Defendant further argues that the testimony as to defendant's condition sometime after the alleged crime is immaterial. A review of the record does not reflect the expired time between the alleged crime and defendant's arrest. It does reveal that after Georgia Chrismon had taken the minor boy to the police station and gave the officers the information the officers proceeded to find the defendant and according to Officer Cussins were gone about 10 minutes. No doubt such testimony if it were admissible would be confined to the time of the alleged crime or shortly thereafter. However, according to previous statements of this court the opinion as to whether defendant was in such a state of intoxication as to render him incapable of conscious conception of his acts has been held to be inadmissible. Such ruling no doubt is based upon invading the province of the jury by expressing a conclusion that can only be reached in the minds of the jurors.

■■ This court expressed an opinion in the case of Collins v. State, 15 Okl.Cr. 96, 175 P. 124, 127 where it said:

"It appears from the body of the opinion in that case (Colbert v. State, 4 Okl.Cr. 500, 113 P. 558) that the witness was permitted to testify that the defendant was drunk, but this court

held that such witness should not be permitted to further testify and give opinion, judging from the drunken condition of the defendant, whether or not he was able to walk, etc. A clear distinction is made between permitting a witness to testify as to the intoxicated condition of the defendant, and permitting the opinion of such witness to be given as to whether or not the defendant was so intoxicated as in the opinion of the witness to preclude his having committed the crime charged; that being the ultimate fact to be determined by the jury."

This court is of the opinion that the testimony of the three officers was inadmissible and ordinarily would constitute reversible error. However, in the instant case the record reveals that both the state and defense had indulged in this type of interrogation throughout the trial and prior to the error complained of. On page 19 of the case made there appears the following examination on the part of the state:

"Q. Otis, now, was the defendant tight or was he drunk? A. Well, he was tight, you might say.

"Q. Did he know who you were after you told him who you were? A. All I told him was just my name.

"Q. If he is your cousin why did you have to tell him your name? A. You might say he was too drunk to know who I was.

"Q. Did he know who you were after you told him who you were? A. Yes.

"Q. Did he seem to know what was going on? A. No, can't say that."

(No objection)

On page 19 defense counsel asks the following questions:

"Q. And you thought because he was your cousin and drunk enough that you could get him to do something that you couldn't do yourself? A.

Yes, because I know that I can't buy it. I was too young to buy it.

"Q. But he was doing it as a favor to you? You thought because he was drunk enough he would do it? A. Yes."

Case made page 23, by defense counsel:

"Q. And you also said that day that you talked to him he was too drunk to know you until you told him your name."

We can readily observe that defendant's condition was thoroughly explored by both sides in their examinations of the prosecuting witness prior to the error about which defendant complains. For that reason the court does not feel that the error complained of is sufficient to justify reversal. It appears that defendant's only legitimate defense was that defendant was too drunk to know what he was doing. The court properly instructed the jury on voluntary intoxication and it was definitely a question for the jury to decide.

It is to be observed that the state's testimony is rather conflicting as to defendant's condition. The inadmissible testimony tended to contradict the testimony of state's prosecuting witness Otis Saddle Blanket. The jury found the defendant guilty and recommended that the sentence be suspended.

From a close examination of the record we feel that a retrial of the facts as presented by the transcript would result in a verdict of guilty. We are conscious of the fact that the trial court was not obligated to abide by the jurors' recommendation as to a suspended sentence. However, in view of the opportunity of prejudice afforded by the error discussed herein, the court feels that justice would be better served if the sentence assessed by the court was modified from one year in the state penitentiary to six months in the Oklahoma State Penitentiary and it is so ordered.

POWELL, P. J., and BRETT, J., concur.