HERMAN WOODRUFF v. STATE.

No. A-10902.   May 26, 1948.
(194 P. 2d 215.)

W. R. Wheeler, of Anadarko, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Herman Woodruff, was charged by information filed in the district court of Caddo county, with the crime of rape in the first degree, was tried, convicted, and sentenced to serve fifteen years in the State Penitentiary, and has appealed.

We direct counsel's attention to Rule 7 of the Criminal Court of Appeals, which is set forth in the Appendix

to Volume 44 of the Oklahoma Criminal Reports. This rule specifies the minimum requirements of a brief. Said rule among other things provides:

"First: A concise abstract, or statement of the case, presenting succinctly the question involved and the manner in which they are raised."

The brief of the plaintiff in error does not clearly set forth his specifications of error and the Attorney General in his answer brief states that it has been difficult for him to determine just what were the various contentions of the defendant.

Our analysis of the brief convinces us that the defendant's argument may be summarized as follows: First, the witness, Fredica Dorsey, was an incompetent witness because of her age; second, the evidence is insufficient to support the conviction. We shall discuss these assignments of error together.

The defendant at the time of the alleged assault was 80 years of age and Fredica Dorsey, the girl upon whom the rape is alleged to have been committed, was six years of age. For several months prior to the time of the alleged assault, the defendant and the Dorsey family lived in separate cabins at what is known as the Upchurch Hotel Cabins in Anadarko. The aged defendant was engaged in selling pencils, razor blades, and other small articles on the streets of Anadarko for a living. Occasionally, he had given Fredica Dorsey, the complainant, her sister, and other neighborhood children, a dime, quarter, or other small change, which the children used to buy candy or ice cream. A few weeks prior to the time of the alleged assault, the Dorsey family had moved from the Upchurch Hotel Cabins to a house on east Virginia Street. However, the Dorsey children continued thereafter to go

back to the Woodruff cabin and would ask Woodruff for money.

When Fredica Dorsey was called as a witness, counsel for the defendant objected to her testimony for the reason that she was incompetent to testify because she was not mature enough to know the nature of an oath or to intelligently relate the facts concerning which she was called to testify. Several questions were asked the witness by counsel for the state and by counsel for the defendant, in an effort to ascertain whether the witness was competent to testify.

By statute it is provided:

"The following persons shall be incompetent to testify: * * *

"2. Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. * * *" Tit. 12, § 385, O. S. 1941.

Under this statute it has been held that the test of the competency of a witness is to be determined by degree of understanding and not by its age. Although, many attorneys, in seeking to qualify the witness, ask questions concerning the knowledge of the witness of the sanctity or significance of an oath, this is not the test fixed by the statute. The statute rejects a witness "under ten years of age who appear[s] incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." It has been held many times that under this statute the question of the competency of a witness is addressed peculiarly to the sound discretion of the trial court. Barker v. State, 33 Okla. Cr. 25, 242 P. 274; Collins v. State, 15 Okla. Cr. 96, 175 P. 124; Darneal v. State, 14 Okla. Cr. 540, 174

P. 290, 1 A. L. R. 638; LeFavour v. State, 77 Okla. Cr. 383, 142 P. 2d 132; Easley v. State, 78 Okla. Cr. 1, 143 P. 2d 166, 168.

In Easley v. State, supra, this court stated:

"There is no precise age fixed at which children are excluded from giving evidence. Under the statute, the competency of a child is to be determined, not by its age, but by the degree of understanding which it appears to possess.. As a general rule the child should appear capable of distinguishing between good and evil, and should be of sufficient intelligence to have a just appreciation of the difference between right and wrong, and a proper consciousness of the punishment of false swearing. 272 O. S. 1931, 12 O. S. A. 1941 § 385."

We have carefully read the evidence of this little girl who was seven years of age at the time she testified. She related that she, together with her sister and her ten year old aunt, went to the defendant's cabin on June 24, 1945, to get a dollar to pay their way into the swimming pool; that she went into the Woodruff cabin while the other two small girls waited on the outside. After she had gotten into the cabin, Mr. Woodruff laid her on the bed, locked the door, pulled down the blind, and committed an act of sexual intercourse with her; that when they had finished Woodruff gave her the dollar and she and the other two girls went to the swimming pool; that she was in the house about twenty minutes. This was about 2:00 p. m.; that they left the swimming pool and went home, arriving there about 5:00 p. m.; that her father started questioning her about where she had been and she told him what had happened in the Woodruff cabin; that she was then taken to the police station and from there to the doctor for an examination.

On cross-examination she testified that her aunt was ten years of age and her sister was nine years of age, and that it was not uncommon for either of them to go to the Woodruff cabin and ask for a dime or a quarter.

Doctor R. F. Johnston testified that he made an examination of the little girl, Fredica Dorsey, on June 24, 1945, about 5:00 p. m. The Doctor testified that his examination did not disclose any swelling, bruises, or redness around the vagina, but that the lavia was open and there was some redness on the inside of the vagina lining. He further testified that in his opinion some foreign object had opened up the lavia, but that he would not testify that it was necessarily done on the day of the examination, but that it indicated that it had been recently done. He was further asked the following questions:

"Q. Now, doctor, as an expert witness and having knowledge of children, if a child of six years of age had had intercourse with a man 80 years old that afternoon and left and went down to the swimming pool and played all evening and came back home and then her father asked, 'Where have you been?' and she said, 'I've been swimming,' in your opinion, had she had sexual intercourse that evening without hollering or crying or saying a word? A. Speaking of complete sexual intercourse I would say 'No' because the opening there, I would say the depth of the opening was about a half to three quarters of an inch. Q. And therefore an 80 year old man could not have had intercourse with her? A. Not complete intercourse. * * * Q. The opening in the vagina was just so small it would be about the size of the handle of an ordinary hair brush, wouldn't it? A. No, it was larger. I would say the opening there was about three quarters of an inch, something about like that, and I pulled the vulva back there where I saw the redness, and that depth went in about a half to three quarters of an

inch. Q. It wasn't large enough for the ordinary penis of a man? A. I would say No. Mr. Wheeler: Q. Would it have been possible for a man to have had intercourse with a little girl without making any showing there within a period of five or ten minutes? A. I wouldn't think so."

Theresa Dorsey, sister of the complainant, testified that she, Fredica and Floretta Dorsey, went to defendant's cabin shortly after noon; that Fredica went inside the cabin and somebody pulled down the shade and locked the door; that in about five minutes they called for Fredica to come on out and the defendant yelled "wait a minute"; that in a few minutes Fredica came out with a half dollar and her aunt told her that was not enough for them to get into the swimming pool, and she went back into the house and returned with a dollar bill; that they used the dollar to pay their way into the swimming pool and buy some ice cream cones. She testified that she tried to enter the Woodruff cabin but the door was locked.

She did not learn about the alleged rape until after the girls had arrived at home about 4:30 p. m. or 5:00 p. m., at which time her father inquired as to where they had obtained the money to pay the cost of entering the swimming pool. It was then that her sister related the story of what happened in the Woodruff cabin.

Mrs. Effie Ryan, who lived close to Herman Woodruff, testified that she saw the three little girls at the Woodruff cabin and that one of them went into the house while two stayed on the outside.

The defendant testified in his own behalf that he did not commit the crime of rape as charged in the information; that he was 80 years of age; that he liked all little children and was giving money to them on many

occasions. He further testified that about 11:00 a. m. on the day the alleged attack occurred, the children came to his house; that Fredica Dorsey came into the house while the other two stayed outside, but that he did not pull down the curtain or fasten the door; that the little girl remained in there only about two minutes. He further testified:

"Q. Now, I'll ask you if these two little girls that were on the outside of the building on that day, if they didn't holler to Fredica to come on? A. I heard them holler. Q. Did you answer them and tell them to wait a minute? A. No, I didn't. Q. You heard the little girls testify here to day, didn't you? A. The little girl was in there and I gave them 80 cents and she went on out and then came back and said that that wasn't enough to get bathing suits and go swimming and get some pop corn and they would have to have some more, so I gave her a dollar. Q. How much did you give her that day? A. A dollar and eighty cents. Q. You knew how many there were in the bunch? A. There were three. Q. Do you know why the other two didn't come in with this little girl? A. No, I don't know. Q. Did you invite the two girls that were on the outside in? A. No, I didn't, and the little girl that came in and wanted the money was there just about two minutes. Q. Did she come in the house once or twice? A. She came back and said that 80 cents wasn't enough, she had to have a dollar and I just gave her the dollar. They wanted to go to the show, too, I guess."

There was other evidence on behalf of defendant that he had bragged to several people that he was wealthy, although in reality he was practically penniless. This evidence was admitted in support of the defendant's theory that the prosecution was framed in order to extract money from him.

We have given this case careful attention. After considering the age of the defendant and of the attend-

ant circumstances, including the testimony of the physi-cian, we do not believe the evidence is convincing enough to show an act of sexual intercourse committed by the defendant on the prosecutrix on the date in question. We are convinced that the defendant was performing unlawful lascivious acts with the little children to whom he was constantly giving money. We have had a similar case concerning this defendant which involved an attempt to commit rape on one Dorothy Hamilton, a girl thirteen years of age. Woodruff v. State, 74 Okla. Cr. 289, 125 P. 2d 211.

We have heretofore held that in a prosecution for rape in the first degree, this court may modify the conviction of rape in the first degree to the included offense of assault with intent to commit rape, where the facts in evidence justify or require it. Kilpatrick v. State, 75 Okla. Cr. 28, 128 P. 2d 246.

It is therefore our opinion that the facts in this case are insufficient to sustain a conviction of rape in the first degree, but that they are sufficient to support a conviction for the included offense of assault with intent to commit rape.

It is therefore ordered that the judgment and sentence of the district court of Caddo county be modified by reducing the punishment imposed against the defendant from a sentence of fifteen years in the State Penitentiary for a conviction of rape in the first degree to that of three years in the State Penitentiary for the included offense of assault with intent to commit rape, and the judgment and sentence of the district court of Caddo county as thus modified is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.