# RAWLS v. STATE.

No. A-11264.   Jan. 10, 1951.

(226 P. 2d 984.)

Holmes H. Colbert, Sulphur, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Alex Rawls, was originally charged by an information filed in the district court of Love county with the crime of attempted rape allegedly committed upon one Wilma Marie Hartman, a six year old girl. His sentence of seven and one-half years upon conviction in that court was set aside upon appeal because of the failure of the court to grant the defendant a change of venue after he had made a proper showing entitling him to it. Rawls v. State, 86 Okla. Cr. 119, 190 P. 2d 159. Upon the remanding of said case to the district court of Love county it was thereafter transferred to the district court of Murray county. The defendant was, there tried, convicted, and pursuant to the verdict of the jury was sentenced to serve 13 years in the State Penitentiary, and this appeal has been perfected from that sentence.

The parents of Wilma Marie Hartman lived in the country about 18 miles west of Marietta. The father was a white man but the mother was a full-blood Indian. They were acquainted with the defendant, Alex Rawls, who operated a grocery store where the parents of the little girl had purchased groceries. On February 7, 1946, Charles Hartman, the father of Wilma Marie Hartman, had gone to the farm of S. M. Tapp to do some work.

Mrs. John Black testified that she lived three-fourths of a mile east of the Hartmans; that about 10:30 a. m. on February 7, 1946, the defendant stopped at her place and inquired about Mr. Hartman and she told him that Mr. Hartman had passed with a load of hay, but that Mrs. Hartman and the children were at home; that the

defendant then drove on toward the Hartman place. She next saw him about 2:30 in the afternoon when he passed her place again coming from the direction of the Hartman home.

S. M. Tapp testified that the defendant came to his place about 2:30 p. m. on February 7, 1946, and said he was looking for Charlie Hartman.

Carrie Hartman, mother of Wilma Marie Hartman, testified that she was a full-blood Indian but could speak English as she had attended the white schools up to the sixth grade; that the defendant drove up in front of her house before noon on February 7, 1946, and parked his green looking car on the north side of the house; that she and her three small children, Wilma Marie, Toddle and Vera Mae, were at home; that the defendant inquired about her husband and she told him that he had gone over to Shep Tapps who lived about three miles away; that the defendant came on into her house and gave the children some cookies; that the children went with the defendant back to his car where he said he would give them some more cookies. She was busily engaged in getting dinner about one o'clock when she heard her daughter Vera Mae yelling, "Mama, Alex on top of Cotton, and got snake out" that Cotton was the nickname for her six year old daughter Wilma Marie; that she immediately ran to the car of defendant and saw defendant on top of her little daughter; that she grabbed her child, made her and the other two go back into the house; that she told defendant, "if I had anything I would knock your head off"; that when she got in the house her daughter had pulled her panties off; that she examined them and found they were wet; that she later gave these panties, which had never been washed, to the

county attorney and sheriff when they came out to investigate; that she examined her daughter and found that she was "all red" about her .sexual organs. The witness then identified a pair of small girl's panties that had been made from a flour sack as being the panties which the small child had on at the time the alleged incident occurred. On cross-examination she testified that they were indebted to the defendant for groceries and that she had been in his store one time to pay him $20 on their account; that when her husband came home she related to him what had occurred and on the next day he went to Marietta to report the incident to the officers.

Wilma Marie Hartman was then called as a witness; objection was interposed as to her competency to testify on account of her age and in the absence of the jury a lengthy inquiry was made by the respective attorneys and also by the court, at the conclusion of which the court held that she was competent to testify as a witness. She testified that she was eight years old and in the second grade of school; that her nickname was Cotton and she lived near the town of Leon; that she attended Sunday School, where they taught her about Jesus and that little girls who do not tell the truth go to the bad place; that she knew the defendant and upon request of counsel she pointed him out in the courtroom; that she remembered when the defendant came to her home about two years before on February 7, 1946; that she was then six years old; that Mr. Rawls brought her and her little brother and sister some cookies; that the defendant pushed her over into the back seat of his car and got her little sister down in the front seat and pulled her pantics off her; that the little sister kicked him on the leg and then he got in the back seat on top of her

and put his snake on her and got her all wet; that the defendant hurt her; that her sister Vera Mae ran in the house and told her mama what was going on and her mother gave all of them a whipping.

On cross-examination she testified that she had talked to Mr. Milor, the county attorney, about the case several times but he had not told her what to testify; that she had talked to the attorney for the defendant and had told him exactly the same story as she told on the witness stand. Counsel for defendant then asked several questions about other dates during the preceding two years and to most of them the witness would not make an answer. Finally, when he asked her where she spent Christmas in 1946 she responded, "down at Uncle Bob's and Aunt Auntie's.

H. D. Idell testified that he lived at Burneyville; that on April 16, 1946, just prior to the trial of the defendant in the district court of Love county, the defendant came to him and wrote out the names of twelve of the jurors and asked him to check on those men to see whether they were for him or against him; that at that time the defendant said, "the little girl was too young, that the jury wouldn't take her oath and that all the old woman knowed was that she seed me get up off the little girl".

Taylor Rogers, chief chemist with the State Department of Health for the past 23 years, testified that state's exhibit "A", which was the little panties allegedly worn by Wilma Marie Hartman at the time of the alleged assault, were brought to him by Mr. Milor, county attorney of Love county, on April 26, 1946, and that he took samples of the material from three areas and examined them microscopically; that he discovered the presence of

approximately ten male spermatozoa on each of the three areas. He further testified that the age of a man would affect the number of spermatozoa but that there was a surprising scarcity of male spermatozoa in relation to the size of the strain that appeared on the panties.

On behalf of the defendant, John Furrer testified Charlie Hartman came to see him in Marietta in April, 1946, and said that he did not intend to appear against the defendant any more; that Hartman said he really didn't know whether or not defendant was guilty.

Lewis Tedder testified that Charlie Hartman came to him and said he wanted to get the case dismissed as he did not want to see an innocent man tried and was not sure that this thing happened.

Opal Wilson, a relative of the defendant, testified that Hartman came to the Rawls grocery store on February 15, 1946, which was the day that Rawls was arrested; that Rawls was not at the store when Hartman arrived; that Hartman said he was looking for Alex for a settlement; that the witness went after his grocery bill, thinking Hartman wanted to pay it, but Hartman said no, the money was coming his way this time. Two other witnesses testified as to the good reputation of defendant but on cross-examination their evidence was weakened by admission that they had heard of the defendant being convicted of bootlegging and one of them stated that some of the people thought he had a good reputation and some of them thought that he did not.

The defendant did not testify in his own behalf.

It is first contended that the court erred in overruling a challenge to the jury panel which was interposed at the time the case was called for trial. The record dis-

closes that counsel for the defendant moved to quash the jury panel for the reason that on the 8th day of December, 1948, the defendant was tried in the district court of Murray county for subornation of perjury; that some of the present jury panel were the same as those which were impaneled to try said case. After the motion was interposed the county attorney had the court clerk sworn and she testified that none of the twelve men who were on the panel which tried the defendant were on the present jury panel and that at the trial of that case all the jurors who were not serving in the trial were directed by the court to leave the courtroom and that they obeyed the order of the court. No evidence was offered by defendant in support of his challenge to the panel, whereupon the court overruled this motion to quash, and proceeded with the calling of the jurors with a statement to counsel that he would be liberal in allowing inquiries concerning the possible disqualifications of the jurors. The record discloses that at that time counsel for defendant announced ready for trial; that twelve men were called into the box and were examined for cause. The examination is not set forth in the record but the record discloses that at the conclusion of the examination of the jurors for cause both the state and defendant waived all of their peremptory challenges and accepted the twelve men who had been called into the box.

The statutory provisions for a challenge to a panel are set forth in 22 O.S. 1941 §§ 632, 633, 634, 635, 636, 637 and 638. The burden was upon the defendant to make a proper showing to sustain his motion to quash the panel and he made no effort to sustain this burden. It has been held that a motion to quash the jury panel is properly overruled when any portion of the panel does not come within the objection made. Stuard v. State,

6 Okla. Cr. 94, 116 P. 204. And that the prejudice of individual jurors against accused is no ground for challenges to the panel, but should be raised by challenging for cause the prejudiced jurors individually. Remer v. State, 3 Okla. Cr. 706, 109 P. 247.

It is next contended that the court erred in permitting Wilma Marie Hartman to testify because she was an incompetent witness. 12 O.S. 1941 § 385:

" 'Persons incompetent to testify': Paragraph 2 provides: 'Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly.' "

In construing this statute it has been held in Easley v. State, 78 Okla. Cr. 1, 143 P. 2d 166, 168:

"There is no precise age fixed at which children are excluded from giving evidence. Under the statute, the competency of a child is to be determined, not by its age, but by the degree of understanding which it appears to possess. As a general rule the child should appear capable of distinguishing between good and evil, and should be of sufficient intelligence to have a just appreciation of the difference between right and wrong, and a proper consciousness of the punishment of false swearing. * * *

"The permitting of a child to testify is within the sound discretion of the trial court, and unless this discretion is abused the judgment will not be set aside." In Woodruff v. State, 87 Okla. Cr. 16, 194 P. 2d 215, 216, this court held:

"Under statute specifying what witnesses may testify, competency of a child is to be determined by degree of understanding that it appears to possess, and not by its age.

"There is no precise age at which children are excluded from giving evidence, but, generally, the child should appear capable of distinguishing between good and evil and should have just appreciation of difference

between right and wrong, and a proper consciousness of the punishment for false swearing. * * *

"In prosecution for rape, trial court did not abuse its discretion in permitting seven year old girl to testify concerning alleged sexual act by defendant."

Before ruling upon the objection interposed to the competency of this young girl to testify the court, in the absence of the jury, made extended inquiry in which he allowed counsel for both the state and the defendant great latitude in their examination of the witness. Counsel's contention that she was incompetent is largely based upon the fact that she refused to testify concerning her memory of other things that may have arisen in previous years. Her youthfulness, her refusal to testify concerning her memory of other events which occurred two years previously were matters which affected her credibility as a witness. Her answers indicated that she knew right from wrong and had a proper consciousness of the punishment for telling a falsehood. We are unable to see from the record that the court abused its discretion when he held that the witness appeared capable of receiving just impressions of the facts respecting which she was examined or of relating them truly under the statute.

Counsel further contends that the court erred in permitting the witness, Taylor Rogers, to testify concerning his alleged examination of the panties which was made approximately 80 days from the alleged occurrence of the crime. We are unable to find where counsel made any objection to the testimony of this witness. Furthermore, an examination of the record discloses that the panties were properly identified and although it had approximately been 80 days since the crime was allegedly committed, the chemist stated that after the panties

had become dry the male spermatozoa would have been detectable for many months, maybe a year or more under ordinary conditions. Under the record, the lapse of time between the date of the alleged crime and the examination by the chemist might affect the weight to be given to his evidence, but would not affect its admissibility.

Some complaint is made in general terms by counsel for defendant of the instructions which were given. We have examined the instructions which were given with those which were given in the former trial which was appealed to this court, and the present instructions were evidently copied word for word from those which were given in the former trial. This was the proper thing to do as we considered the instructions in the other appeal, and in our opinion it was held that the instructions substantially stated the law of the case and were properly given. We adhere to that ruling.

We feel that the defendant has been given a fair and impartial trial and the judgment and sentence of the district court of Murray county is accordingly affirmed.

BRETT and POWELL, JJ., concur.