Ray Eugene LANCASTER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–264.

Court of Criminal Appeals of Oklahoma.

Oct. 22, 1975.

B. Jack Taylor, Chickasha, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant, Ray Eugene Lancaster, hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding, and convicted of the crime of Carrying a Firearm by a Felon in the District Court of Grady County, Case No. CRF–74–79. Punishment was assessed at a term of three (3) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with said verdict, the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Mickey Busby testified that on the morning of July 24, 1974, he, his grandson and two hired hands arrived at Busby's lease property near Chickasha where they spotted two men in the field near where some marihuana had been growing. He stated that on numerous occasions he had experienced difficulty with armed trespassers on the property. Busby let his hired hands out and then drove to the other end of the field. When he got out of his pickup carrying a shotgun, the defendant took aim at him with a pistol. It was not until the two hired hands came up behind the defendant that the defendant lowered the pistol and said, "I would have shot you if I hadn't of seen the little boy in the pickup with you." After being advised they were trespassing, the defendant and his companion left.

Busby's next encounter with the defendant was on the same property later in the day when the defendant and his companion approached with guns drawn. The defendant fired at one of the hired hands and then struck him several times about the head. After the defendant and his companion left, Busby found a bullet on the ground near where the defendant had been standing. Busby then identified State's Exhibit No. 1 as the weapon the defendant had during the second incident.

The State next called Mike Stump, Busby's seven-year-old grandson. His testimony was essentially the same as his grandfather's, and he identified the defendant as the man who had held the gun on his grandfather and hit the hired hand.

The State next called Carl Reed, Deputy Sheriff of Grady County, who testified that on July 24, 1974, he went to the Busby property regarding some trouble. The officer then proceeded to the defendant's residence where he advised defendant of his rights. The defendant then stated he had a weapon and went to his automobile and brought back a .22 Ruger pistol and handed it to Officer Reed. The defendant then stated that the car was his and that he had no other firearms. Reed returned to the Lancaster residence the following day with a search warrant and found a .38 caliber semi-automatic pistol. The bullets found in the clip were identical to the one found by Busby. The State then rested.

The defendant, testifying in his own behalf, stated that on July 24, 1974, he and Pete Moomey were cutting across a field to the defendant's home when two men started shooting at them with shotguns. The defendant and Moomey started to run and a pickup pulled up in front of them. Mickey Busby got out with a shotgun, and the defendant grabbed an air-operated BB pistol that belonged to Moomey and held it on Busby until things quieted down. After being told that the property was posted, the defendant and Moomey left. Shortly thereafter, the defendant discovered his wallet was missing and went back looking for Busby. As the defendant was approaching Busby, one of Busby's hired hands made a move for a shotgun and there was a fight. The defendant then went home. Shortly thereafter Deputy Reed and a highway patrolman came out to the defendant's home and asked if he had a weapon. The defendant stated that he did, went to his wife's car, and brought back a .22 pistol. The defendant was then advised of his rights and arrested. The defendant

stated his wife had obtained the gun at his mother's home and that he had never been in possession of it. Defendant further admitted that he had a previous felony conviction for a second degree forgery in 1973. On cross-examination the defendant stated that Moomey was with him during the second altercation and that Moomey had the BB pistol and a .38 automatic.

Mrs. Pete Moomey then testified that she rode with her husband and the defendant when they returned to Busby's property to look for the wallet. As the defendant and her husband walked up to Busby, one of the hired hands made a move towards Busby's pickup, and the defendant struck him with his fist. Busby and the other hand started to move towards the defendant, and Moomey fired a shot in the air. At no time did she see the defendant with a weapon.

The defendant's mother then testified that her son's gun collection had been moved to her house after the felony conviction and that she had given the .22 pistol to the defendant's wife. The defense then rested.

After the testimony of several rebuttal witnesses, the first stage of the proceeding ended and the jury returned a verdict of guilty. During the second stage of the proceeding, the State introduced a certified copy of the judgment and sentence arising out of the defendant's second degree forgery conviction in Oklahoma County. After deliberating, the jury assessed punishment as set out above.

█ The defendant's first assignment of error asserts that the voluntary statements made by Busby concerning other parties harvesting marihuana in his field were prejudicial to the rights of the defendant and that the trial court erred in not ordering a mistrial. The record reflects that Busby made statements in answer to the questions of the prosecuting attorney as follows, to-wit:

"A. (Mickey Busby) Well, we were just almost there. I come up on the corner of it and the boys that was riding with us said they seen two boys out in there. I looked around and I saw two boys up in the edge of the timber there on the corner of my lease.

Q. (Mr. Kramer) Why were you concerned about that?

A. There was marijuana that had been growing up there.

MR. TAYLOR: Your Honor, we object.

THE COURT: Approach the bench.

(Out of hearing of the jury)

MR. TAYLOR: We would ask for a mistrial as this being evidence of another crime perpetrated by this man for permitting marijuana to grow on his property. He committed a crime by allowing it to grow.

THE COURT: Overruled and exceptions allowed.

(In hearing of jury)

Q. To what extent, if at all, have you had difficulty with trespassers on that property?"

A. Well, they have torn my fence down and they would leave my gates open. I had signs put up around it.

Q. What do your signs say?

A. No trespassing.

Q. Have you ever encountered difficulty with subjects upon that property?

A. Yes, sir.

Q. What kind of difficulties?

A. There was different times they was harvesting marijuana in that field.

Q. No, I am asking if there were ever any firearms or anything out there?

A. Yes, sir.

MR. TAYLOR: Your Honor, I object.

THE COURT: Approach the bench.

(Out of hearing of jury)

MR. TAYLOR: This is evidence of another crime and I move for a mistrial at this time, your Honor.

MR. KRAMER: We are only trying to show the reason for the actions of this man in being concerned about these trespassers upon his property. We do not intend to show evidence this defendant was harvesting marijuana and this witness has not testified they were. He simply described the problems he has had with trespassers."

█ It is apparent from the record that the witness did not testify that the defendant was in the process of harvesting marihuana or in the field for any illegal purpose. It was a statement made merely for the purpose of showing why Busby was concerned about the presence of strangers in his field. It is our opinion that the statements did not constitute prejudicial error in the instant case. It should also be noted that the defendant did not request that the jury be admonished to disregard the statements. Such a failure constitutes a waiver of any error which might have occurred in the instant case. *United States v. Eaton*, 485 F.2d 102 (10th Cir. 1973). The defendant's first proposition is without merit.

█ The defendant's next assignment of error urges that since a felon may take up arms in self-defense, then a felon in possession of a firearm solely for the purpose of self-defense cannot be found guilty of possession after a former conviction pursuant to the provisions of 21 O.S.1971, § 1283. In support of his contention, the defendant cites *Townley v. State,* Okl.Cr., 355 P.2d 420, which holds that unlawful possession of a firearm does not deprive an accused of the right to use same in self-defense. It is our opinion that the facts in the instant case are distinguishable. In *Townley* the accused was charged with assault and battery with a dangerous weapon. In the instant case the defendant was charged with possession after a form-er conviction of a felony. It is not necessary that the State prove that the defendant had possession of the gun with the specific intent to do a harmful act. The State must only prove that the defendant had a previous felony conviction and that he carried a pistol on his person. *Sessions v. State*, Okl.Cr., 494 P.2d 351. The defendant's alleged use of the firearm in his own self-defense in the instant case is not a defense to the particular crime charged. Defendant's second assignment of error is without merit.

█ The defendant's third assignment asserts that the trial court committed reversible error in overruling the defense motion for a new trial upon the grounds that during a recess, members of the jury entered the District Attorney's office. The record reflects that the trial court held an evidentiary hearing to determine if there had been any improprieties. The relevant portion of the record is as follows:

"THE COURT: Now, there has been some mention that perhaps one or all three of you have been seen talking to one side or the other in this case. I will ask you if any of you have talked to any of the parties that are involved in the case? Has anyone attempted to talk to you or influence you in anyway in the decision you have reached?

MR. SPLAWN: There was one guy that asked me how I was going to vote.

THE COURT: Who was that?

MR. SPLAWN: This gentleman right here. (Indicates)

THE COURT: In doing that did he indicate in anyway how you should vote?

MR. SPLAWN: No, he just asked me and I told him I didn't have any comment and just walked on off.

THE COURT: Anyone else?

MR. BURK: No one asked me.

MR. McCARTHY: No one asked me.

THE COURT: There was some mention that perhaps you might have gone in the District Attorney's office. Did any

of you go in there during the day in the last day or two?

MR. SPLAWN: I asked the deputy if he was supposed to ask me that and he took me by the arm and took me in there —

THE COURT: Ask you what?

MR. SPLAWN: How I was going to vote. I just asked the deputy if he was supposed to do that. He asked Mr. Kramer and Mr. Kramer said he had no comment about it.

THE COURT: Does anyone else have any questions?

MR. KRAMER: Yes, sir, I think the record should reflect the party the juror designated is a relation to the defendant and not a party of the State's case.

THE COURT: All right. I will ask the man with the headband on to stand up and give us his name, please.

GENTLEMAN: Stephen Eugene Lee.

THE COURT: Are you related to the defendant in this case?

GENTLEMAN: Yes, sir.

THE COURT: Anything further?

MR. TAYLOR: Could we ask some questions?

THE COURT: Yes, sir.

MR. TAYLOR: Mr. Burk, are you saying you did not go in the District Attorney's office and talk to Mr. Busby yesterday?

MR. BURK: No, sir, I didn't. I just met him out in the hall and greeted him.

MR. TAYLOR: Have you had any conversations?

MR. BURK: No, sir, I just said 'hello' and I shook his hand.

MR. TAYLOR: Did you have any conversation with Mr. Busby?

MR. BURK: Not about this. I met him out on the street.

MR. TAYLOR: Did you talk to him?

MR. BURK: No, sir. This was when he was getting in his car. I said: 'See you later.'

MR. TAYLOR: Mr. McCarthy, did you talk to Mr. Busby?

MR. McCARTHY: No, sir, I don't even know him.

MR. TAYLOR: Did you go in the District Attorney's office since this trial started?

MR. McCARTHY: I went in there and used the telephone to call home. That is the only time I was in there.

MR. TAYLOR: Did you talk to Mr. Busby while you were in there?

MR. McCARTHY: No, sir.

MR. TAYLOR: Mr. Splawn, did you talk to Mr. Busby?

MR. SPLAWN: No.

MR. TAYLOR: Have you not talked to him at all since the trial began?

MR. McCARTHY: No, sir. He spoke to me and I spoke back. I said: 'How are you?' That was the only thing that was said."

■ From the above, it is apparent that nothing occurred which would in any way prejudice a fundamental right of the defendant, and the trial court did not abuse its discretion in determining no error had been committed. It should also be pointed out that the defendant cites no authority in support of his argument. This Court has held on numerous occasions that it is necessary for defense counsel not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion of error. *Sandefur v. State*, Okl.Cr., 461 P.2d 954.

■ Defendant's last assignment of error contends that the trial court commit-

ted reversible error in allowing Mike Stump, a seven-year-old minor, to testify. The record reflects that the trial court held an evidentiary hearing to determine whether the seven-year-old minor was competent to testify as a witness. After the hearing the trial court found that the boy was able accurately to relate impressions and was capable of receiving just impressions of fact and relating them truly. Permitting a child to testify is within the trial court's discretion and unless such discretion is abused, the trial court's ruling will not be set aside. *Woodruff v. State,* 87 Okl.Cr. 16, 194 P.2d 215. After an examination of the child's testimony, both during the evidentiary hearing and trial, it is our opinion that the trial court did not abuse its discretion in permitting the complained-of testimony. See also *Barker v. State,* 33 Okl.Cr. 25, 242 P. 274. The defendant's last proposition in error is without merit.

For all the reasons set out above, it is the opinion of this Court that the defendant received a fair and impartial trial, that no substantial right was prejudiced and that the judgment and sentence appealed from should be and the same is hereby affirmed.

BRETT, P. J., dissents (attached).

BUSSEY, J., concurs.

BRETT, Presiding Judge (dissents) :

I am compelled to dissent to this decision because I believe this defendant did not receive a fair trial as contemplated by the law. From the moment the prosecuting witness was allowed to assert that defendant was harvesting marihuana in his field, the jury must have commenced to disbelieve anything defendant might have had to offer. Likewise, I believe the jury became so contaminated that defendant's motion for a new trial should have been allowed.