## LUTHER YORK v. STATE.

No. A-6302.    Opinion Filed July 7, 1928.
(269 Pac. 323.)

Geo. L. Zink, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was tried in the county court of Kiowa county, on a charge of selling intoxicating liquor, was convicted, and sentenced to pay a fine of $400 and cost, and to be imprisoned in the county jail of Kiowa county for a period of 120 days. Motion for new trial was filed and overruled, exceptions saved, and the defendant has appealed to this court. The date of the alleged sale was given as July 12, 1925.

The testimony on behalf of the state, in substance, is as follows: Edward Hummingbird testified that he was acquainted with Luther York, on the 12th day of July, 1925. that he is 21 years of age; that on the 12th day of July, 1925, which was Sunday, he went to Saddle Mountain store and post office about 8 or 9 o'clock in the morning; that David Tonemah was with him; that he wanted to cash a check, but did not get the check cashed, but did buy a half quart of whisky from defendant; that he and David Tonemah were traveling on horseback. David Tonemah does not appear in the record as a witness to the alleged sale. Witness claims that he, together with some other Indians, went back to the store in a Ford car about noon and got some whisky; that they drove around back of defendant's store.

The record discloses that witnesses attended a ball game at Craterville, about 30 to 32 miles from Saddle Mountain store the day of the alleged sale, and that they returned that night, and at a well near the store the witness Hummingbird was arrested on a charge of being intoxicated. The record shows that Hummingbird, after he was arrested, filed a complaint against Follie Smith, charging him with selling the whisky to the witness Edward Hummingbird that was found in

his possession at the time of his arrest; later Hummingbird told several parties that he did not get the whisky he had from Mr. York.

Isobel Spottedbird called as a witness on behalf of the state stated she knew Edward Hummingbird, David Tonemah, James Auchchiah, and Susie Yeague, and the defendant, Luther York; that she was at the York place of business on Sunday last July; they were traveling in a car; defendant put some whisky in the back seat of the car; "I could not see it when he brought it out but he put it in the back seat."

L. R. Moulder testified for the state that he knew the defendant, Luther York; that he knew Edward Hummingbird and David Tonemah; that he saw Susie Yeague and James Auchchiah on Sunday, the 12th of July, with some other Indians in a Ford car, that he saw them in front of Mr. York's store on that day.

This is, in substance, the testimony introduced by the state. The defendant called Edward Hummingbird for further cross-examination and shows that Edward claimed he got the whisky outside of the fence running along the section line; that the fence was right back of the store.

Clyde Posten, testifying for the defendant, identified a warrant that had been issued for Follie Smith upon an affidavit of Edward Hummingbird, stating that Smith was the one who sold him the whisky.

G. E. Woodberry testified on behalf of the defendant that he resided at Lawton on the 11th and 12th day of July, 1925; that he was in the hotel business running the Ramsey Hotel and knew the defendant; a sheet of the hotel register was identified by the witness; witness stated he was not present when the name was written there; the sheet showed that Luther York was

registered in room 110 on the 11th day of July, 1925; witness stated that he saw the defendant, York, at the hotel Saturday evening July 11, 1925, and on Sunday until in the afternoon; "the first time I noticed the register sheet as to Mr. York being registered, they asked me about it, and I looked it up and found that he was."

M. L. Jones testified for the defendant that he was in Lawton on the 12th of July, 1925; that he knew the defendant, Luther York; that he saw the defendant in Lawton on the 11th and 12th of July, 1925; that he came to the hotel about dark on the 11th, and stayed in the same room with him that night, and they were together until about 12 or 1 o'clock on the 12th of July, the day being Sunday. Witness further stated that he was selling snuff on the road and defendant was a customer of his; that the last time he saw the defendant on the 12th day of July was about one or 1:30 in the afternoon, in the city of Lawton.

D. E. Brutton testified that he lived at Lawton; that he sold groceries wholesale to retailers; that he was acquainted with the defendant, Luther York; that he saw the defendant on both the 11th and 12th of July, 1925; that defendant was at his house in Lawton; he and Mr. Jones came together; afterwards he saw him down at the hotel. the last time about 12 or 1 o'clock; witness gave as his reason for saying it was the 12th of July by other engagements he had.

The defendant testified in his own behalf that he knew Edward Hummingbird; had seen him a few times; that he was not at home on July 12th, 1925, until late in the afternoon; that he was in Lawton, Okla., on the 11th and 12th of July; that he went to Lawton the forenoon of July 11th; that he spent the night in Lawton at the Ramsey Hotel, and remained

in Lawton until about 2 o'clock in the afternoon of the 12th of July; that he arrived home about dark; that he saw Mr. M. L. Jones in Lawton some time about 5 or 6 o'clock on July 11, 1925; that he and M. L. Jones occupied the same room that night at the hotel; had breakfast together the next morning; that they drove from the hotel to Mr. D. E. Brutton's home and returned to the hotel, that he had never at any time sold Edward Hummingbird whisky.

On cross-examination defendant stated that he left his home on the 11th of July, in' the forenoon on Saturday; when I am at home I see a number of Indians most every day; I did not drain the crank case of Susie Yeague on the 12th of July, 1925.

The affidavit then was read to the jury by the defendant, wherein the witness Edward Hummingbird charged Follie Smith with having sold him intoxicating liquor on the 12th of July, 1925; also the criminal warrant for the arrest of Follie Smith.

M. G. Jones and a number of other witnesses testified as to the previous good character of the defendant.

Irvin DeMarcus testified that he was at Saddle Mountain store on the day of July 12, 1925, about sundown, and that the defendant waited upon him. at the store; witness admitted he had been applicant for the post office to which defendant had been appointed; that he did not know the date he bought the lunch at defendant's store where defendant had served him.

Ralph Dodd, a rebuttal witness, stated that he was in the store that evening late; about 30 minutes before sundown; that he saw the defendant there at the time; that he heard of the Indian being arrested in the month of July, but he could not tell what date

it was and he did not know whether this was the only time Edward Hummingbird was arrested or not.

David Tonemah testified he was acquainted with the defendant; that he heard Edward Hummingbird had been arrested; he was at the Saddle Mountain store on the same day he heard Hummingbird was arrested that night; that he saw Luther York there, but he did not know whether this was the only time Edward Hummingbird had been arrested; that he did not know of his own personal knowledge whether he had ever been arrested there.

This is in substance the testimony on behalf of the state and defendant. A number of errors alleged to have been committed by the court is urged by the defendant in the trial of this case. The defendant in his own behalf testified positively that he did not on the 12th day of July, 1925, sell to Edward Hummingbird any whisky, and also testified that he was not at his place of business, or at home until some time in the afternoon of July 12th, 1925. This defense of the defendant is in the nature of an alibi; that is to say, that he could not be guilty of the alleged offense for the reason that he was not at the place on the day the prosecuting witness claims to have bought the whisky at the Saddle Mountain store, and therefore could not be guilty.

The defendant insists that the verdict in this case is contrary to the law and the evidence, for the reasons herein stated, and further urges that, when the prosecuting witness, Edward Hummingbird, was arrested for being intoxicated, he stated he bought the whisky from Follie Smith, and made affidavit to a complaint stating that he had procured the whisky from Follie Smith and caused the arrest of Smith. Some time

after Hummingbird caused the arrest of Smith he changed his story and charged the defendant in this case with the sale of the whisky to him which he swore he had purchased from Smith. It is disclosed by the record that Hummingbird and others with him were seen near Lawton on the 12th of July, 1925, a distance of 30 or more miles from Saddle Mountain store, and later in the day at Craterville, 30 miles or more away, attending a ball game. The testimony tends to show that Hummingbird, and those with him, were driving from one place to another during the day of the alleged sale of the whisky and were not sure as to just what points they visited during the day. David Tonemah, who was alleged to have been with Hummingbird at the time of the alleged purchase of the whisky from the defendant in this case, was not called as a witness, and no reason given why he was not called. If true the whisky was purchased by Hummingbird from the defendant, it would seem that Tonemah, who was with the defendant, would have been called as a witness.

The evidence of the witness Hummingbird, though positive as to the purchase of whisky, is of an uncertain and indefinite character as to many facts and circumstances surrounding his actions on the 12th day of July, 1925. The only evidence that tends to corroborate the prosecuting witness is the testimony of Susie Spottedbird, who claims to have been with Hummingbird when he got some whisky at Saddle Mountain store. It is admitted by Susie Spottedbird and other parties in company with him that they had been driving to different places during the day and had attended the ball game at Craterville. Her testimony as to what took place during the day was indefinite and of a doubtful character. The testimony of the de-

fendant was positive, definite and certain that he did not make the sale of whisky to the prosecuting witness on the 12th of July, 1925, for the reason that he was not at the place where it is alleged that the purchase was made on the date stated by the witness; that, on the contrary, he was in the city of Lawton 30 or 40 miles away, and did not reach his home until late in the afternoon on that day. Corroborating the testimony of the defendant is the hotel register of the Ramsey Hotel at Lawton, showing that the defendant registered at the hotel, and was there the night lof the 11th, and did not leave there until the early after-noon of the 12th. The testimony also of Mr. M. L. Jones, who was aquainted with the defendant, and who claims to have occupied the same room with the defendant, corroborated the defendant as to his where-abouts during the evening of the 11th of July, 1925, and the day of the 12th up until in the afternoon. The corroboration of defendant's testimony shows to have been made by parties who have no interest in the result of this charge.

The defendant reserved exceptions to the instruc-tion of the court and argues in his brief that ' under the evidence in this case it was the duty of the trial court, even though no request was made for such an instruction, to have instructed the jury upon the ques-tion of an alibi, an alibi being the chief defense of the defendant in this case, citing Hobbs v. State, 8 Ga. App. 53, 68 S. E. 515, wherein it is stated:

"When an alibi is the only defense set up by a defendant in a criminal case, and his defense is sus-tained by testimony, the jury should be properly in-structed in the rules governing the consideration of the subject of alibi, even in the absence of a request, and although the defense of alibi is included in the general plea of 'not guilty.' It is the duty of the court to in-

struct the jury, without request, in the law applicable to the substantial issues presented by the evidence."

Our statutes require the trial court to instruct the jury as to all matters of law which is necessary for its information to arrive at a proper verdict. Should the court have instructed upon the defense of alibi without a request of the defendant? This question has been before this court in many cases. In England v. State, 29 Okla. Cr. 38, 231 P. 1087, in the second paragraph of the syllabus, the court says:

"Where a defendant is on trial and the evidence raises the defense of an alibi, and the defendant does not request an instruction upon such defense and does not except to the action of the court in not instructing on such point, a conviction will not be reversed unless it clearly appears from the record that the defendant was injured thereby."

Following the same language as used by the court in Inklebarger et al. v. State, 8 Okla. Cr. 316, 127 P. 707, it will be seen that the holding of the court is universal that, where a defendant is on trial, and the defense is an alibi, and defendant does not request an instruction on such defense, and does not except to the action of the court in not instructing on said point, a conviction will not be reversed, unless it clearly appears from the record that the defendant was injured thereby. The question to be detrmined in this case on the defense made by the defendant is, Was the defendant prejudiced by the failure of the court to instruct the jury upon the question of an alibi as a defense on the charge against him? The commission of the offense of which the defendant was charged in this case required the presence of the defendant at the necessary time and place. His defense was proper and one often relied on for an acquittal. It is a good defense and the defendant in this case relied upon it. All his testimony

tended to show that he could not be guilty for the reason he was not at the place at the time the alleged purchase was made. For the defendant to be guilty it was necessary for him to have been at Saddle Mountain store at the time testified to by the witness Hummingbird. If the defendant's evidence was sufficient to raise a reasonable doubt of his presence at the time where the alleged crime was committed, where his presence is required, or if the state's evidence is so defective as to raise a reasonable doubt as to the defendant being present, the defendant was entitled to an acquittal. The record discloses that no request for an instruction on the defense of alibi was made by the defendant, and no exceptions taken to the failure of the court to instruct on his defense, and it does not clearly appear that such failure to instruct on the defense of alibi prejudiced his rights before the jury.

It is urged by the defendant in his sixth assignment of error that the court misdirected the jury as to the law; the instruction complained of being as follows:

"(5) You are the exclusive judges of the weight and credibility to be attached to the testimony of the witnesses who have testified in this cause. If you find that any witness has testified falsely to any material fact during the trial of this cause, you are at liberty to disregard the testimony of such witness, but you are not compelled to do so. You may give to the testimony of such witness such weight and credibility as you think it deserves."

This instruction was not correct. It was the duty of the court to instruct the jury if they believed from the evidence that any witness has willfully and knowingly sworn falsely to any material matter, then they may, if they deem proper, disregard the entire testimony of such witness, unless they find it corroborated

by other and credible evidence, or they may without such coroboration give the testimony of such witness on other points such weight and value as they think it entitled to have, the jury being the sole judges of the credibility of the witness and weight and value to be given to their testimony; but the mere fact that a portion of the witness' testimony respecting a material matter may be found to be untrue without considering whether the witness acted in good faith in giving it or without determining that he willfully and knowingly testified falsely does not justify applying to such witness and to his testimony the maxim, "Falsus in uno, falsu in omnibus." The question is not alone whether the witness is wrong as to a particular matter about which he has testified, but also whether he has willfully and knowingly falsified and thereby shown that he has no regard for the truth. Billingsley v. State, 4 Okla. Cr. 599, 113 P. 241.

In this case the defendant testified in his own behalf and his testimony tended to show that he was not at the place where the prosecuting witness alleges defendant was when he purchased whisky. The defendant also introduced testimony tending to corroborate his testimony as to where he was at the time and date alleged, and could not have been at Stone Mountain store at the time the purchase was alleged to have taken place.

The instruction of the court complained of failed to tell the jury that, before they would be justified in disbelieving any witness who had testified in the case, they must believe from the testimony that the witness had willfully and knowingly testified falsely to facts material to the trial of the case.

In view of the fact that the testimony of the defendant tended to show that defendant was not present

at the time the alleged purchase of whisky took place, and in view of the further fact that all of the testimony tended to establish an alibi, it is apparent that the instruction complained of by the defendant did not properly advise the jury as to the law applicable to the question as to whether or not witnesses had willfully and knowingly testified falsely. We think the instruction complained of by the defendant was erroneous and prejudicial to the rights of the defendant.

There are other errors asigned, but the view we take of the record we do not deem it necessary to consider them.

For the error complained of, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.