**Michael Wayne GREEN and, Danny George Parker, Appellants,**

v.

**STATE of Oklahoma, Appellee.**

**Nos. F–81–797, F–81–798.**

Court of Criminal Appeals of Oklahoma.

Oct. 9, 1985.

Rehearing Denied Feb. 24, 1986.

9. *Moran v. Loeffler-Greene Supply Co.,* 316 P.2d 132 (Okl.1957).

10. *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 (Okl.1982).

Patti Palmer, Asst. Appellant Public Defender, Norman, for appellants.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellants, Michael Wayne Green and Danny George Parker, were jointly tried by jury in the District Court of Pittsburg County, Oklahoma, Case No. F–81–120, for the crime of Murder In the First Degree. The jury returned a verdict of guilty and set punishment at death by lethal drug injection for each appellant. The trial court sentenced the appellants in accordance with the jury's verdict.

This case arose from the brutal stabbing death of inmate Arthur Lynn Mosier at the McAlester State Penitentiary on September 5, 1980. Evidence at trial revealed that the appellants, both of whom were serving lengthy prison terms, attacked Mosier in the west cell house and stabbed him seventeen times with a butcher knife and a "sticker," a home-made weapon apparently fashioned from a piece of wire. Mosier was stabbed in the chest and back, and his throat was brutally slashed. Two inmates witnessed the stabbing from their cells. One of the inmates testified the "sticker" was tossed into his cell following the attack, but that he quickly threw it back out onto the run. Moments later, Green appeared at his cell door and asked the inmate what he had seen. When the inmate replied he had seen nothing, Green walked away.

## I.

### PRE–TRIAL ISSUES

Prior to trial, the appellants jointly filed a motion to dismiss, alleging that their rights under the Sixth and Fifth Amendments to the United States Constitution were violated by a delay of seven months between the time of the offense and the filing of charges by the State. This claim was disallowed by the trial court, and we agree with that ruling.

The facts relating to this issue are summarized as follows: Mosier was stabbed to death at the penitentiary on September 5, 1980. On September 15, 1980, the appellants were sentenced in a prison disciplinary proceeding to ninety (90) days solitary confinement as administrative punishment for the offense. After removal from solitary confinement, appellants were placed in administrative segregation, and the investigation was transferred from prison authorities to the Oklahoma State Bureau of Investigation. On April 16, 1981, appellants were charged in the District Court of Pittsburg County for the offense of Murder in the First Degree. Trial commenced on September 16, 1981, and concluded September 21, 1981.

We are, of course, concerned with the passage of seven months between the commission of this offense and the filing of charges by the State. However, appellants' reliance on the Sixth Amendment right to a speedy trial is unavailing. In *State v. Edens*, 565 P.2d 51 (Okl.Cr.1977), we held

the requirement of a speedy trial as protected by the United States Constitution and Oklahoma Constitution is not applicable in cases such as this, wherein pre-accusation delay is involved. The right to a speedy trial, protected by both the Sixth Amendment to the United States Constitution and Art. II, § 20, of the Constitution of the State of Oklahoma is limited in application, by express terms, to an "accused" and one is not an "accused" until an information or indictment is filed, or where the person is in actual

custody or has been arrested in the course of prosecution of the offense in question.

*Id.* at 52–53. *Accord United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). We held in *Owens v. State,* 588 P.2d 581 (Okl.Cr.1978), that an administrative lock-up of an inmate after the alleged commission of a crime does not constitute an arrest, so as to trigger the protections of the Sixth Amendment. *Accord United States v. Duke,* 527 F.2d 386 (5th Cir.1976).

■ Though the Sixth Amendment speedy trial guarantee does not extend to pre-accusation delays, "the *due process* clause may under some circumstances require dismissal of charges due to [oppressive] pre-accusation delay." *Cooper v. State,* 671 P.2d 1168, 1175 (Okl.Cr.1983) (emphasis added). Under due process analysis, the test is whether compelling an accused to stand trial after a governmental delay in filing charges violated "fundamental conceptions of justice which lie at the base of our civil and political institutions ... which define the community's sense of fair play and decency." *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). These fundamental notions of justice are offended when the accused demonstrates *actual* prejudice from an *unreasonable* delay on the part of the State.[1] *Id.* at 789–90, 97 S.Ct. at 2048. *See also United States v. Taylor,* 603 F.2d 732 (8th Cir.1979). The threshold requirement the accused must establish is, however, actual prejudice, for "proof of actual prejudice makes a due process claim concrete and ripe for adjudication." *See United States v. Lovasco, supra* 431 U.S. at 789, 97 S.Ct. at 2048.

Appellants allege prejudice from the disappearance of Richard Hayes, whom they characterize as a "material witness" to their case. They claim Hayes would have testified regarding their whereabouts during the time of the murder. It is asserted that Hayes was released from the penitentiary sometime between the murder and the filing of charges in Pittsburg County District Court.[2] Subsequent efforts to locate Mr. Hayes proved unsuccessful, according to appellants.

■ We do not agree that actual prejudice was sufficiently established by appellants' evidence. First, there was no showing by appellants that the witness could have been obtained but for the pre-accusation delay. *See e.g. Owens v. State, supra* at 583–84. Second, the testimony of Mr. Hayes, according to the offer of proof submitted by the defense, would merely have constituted cumulative testimony of that offered by other prison inmates that appellants were in the yard at the time of the murder.

This claim of error has no merit.

## II.

### ISSUES RELATING TO THE GUILT PHASE OF TRIAL

■ Appellants next argue the trial court committed reversible error by failing to issue a jury instruction on the defense of alibi. At trial, appellants attempted to support this defense with evidence that they were seen in the prison yard at the time of the murder. However, appellants offered no requested instructions regarding this issue, nor did they object to the instructions delivered by the trial court.

We have repeatedly held that

[if] counsel for defendant are of the opinion that additional instructions should be given to the jury, it is their duty to reduce them to writing, submit them to the trial judge, and request that they be

---

**1.** We also hold today that Okl. Const. art. II, § 6, which requires that "justice shall be administered without ... delay," forbids only *unreasonable* delays by the State, and will be construed under the analysis noted above.

**2.** In their joint pre-trial motion, appellants also asserted they were unable to locate an inmate named Bobby Horn. However, Horn was discovered and called as a defense witness. He testified at trial that he had seen Green and Parker in the prison yard around the time of the murder.

given. If they fail to do this, a conviction will not be reversed unless [the Court of Criminal Appeals] is of the opinion in the light of the entire record, including instructions which were given, that the failure of the trial court to instruct the jury upon some material question of law, the defendant has been deprived of a substantial right.

*Wolf v. State,* 375 P.2d 283, 287 (Okl.Cr. 1962), *quoting, Sheehan v. State,* 83 Okl.Cr. 41, 172 P.2d 809 (1946). *See also York v. State,* 40 Okl.Cr. 312, 320, 269 P. 323 (1928) (in the absence of a request, failure to give an alibi instruction is not error, unless it clearly appears the appellant was prejudiced thereby). The instructions herein adequately advised the jury on the essential elements of the offense, explained the presumption of innocence, placed the burden on the State to prove appellants guilt beyond a reasonable doubt, and were correct in all matters. The jury also was specifically charged that any reasonable doubt it held regarding guilt or innocence should be resolved in the appellants' favor. Furthermore, defense counsel was allowed full and unrestricted argument regarding this theory of defense. We, therefore, cannot say the instructions, as a whole, misdirected the jury, so that a failure to give an alibi instruction, absent a request, resulted in a miscarriage of justice or denial of a substantial right. *See* 20 O.S.1981, § 3001.1. This assignment of error is without merit.

### III.

### ISSUES RELATING TO THE MOTION FOR NEW TRIAL ON NEWLY DISCOVERED EVIDENCE

On December 1, 1982, the appellants filed a joint motion for new trial based on newly discovered evidence. In the motion, they claim Frank Minister, an inmate in the penitentiary at the time of the murder, actually stabbed and killed Mosier with a butcher knife. The motion was supported by Minister's affidavit, in which he confessed to the crime. At an evidentiary hearing on December 21, 1981, Minister testified that he alone killed Mosier. Randy Collinsworth, another inmate, testified he saw Minister

kill Mosier. The motion was denied by the trial court, and we affirm that ruling.

Title 22 O.S.1981, § 952, states, in pertinent part:

A court in which trial has been had upon an issue of fact has power to grant a new trial when a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, upon his application in the following cases only:

\* \* \* \* \* \*

Seventh. When new evidence is discovered, material to the defendant, and which he would not with reasonable dilligence have discovered before trial ...

Regarding the statute's requirement of materiality, we have held that the appellant must bear the burden of proving the existence of a probability that the newly discovered evidence, if presented at trial, would have changed the jury's verdict. *See Smith v. State,* 590 P.2d 687, 689 (Okl.Cr. 1979). *See also Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984). Appellants have failed to meet this burden.

In both the affidavit and at the evidentiary hearing, Minister testified that he alone stabbed Mosier, using a butcher knife. However, this testimony was wholly inconsistent with both the testimony of prosecution *and defense* witnesses that two men killed Mosier. Furthermore, the medical examiner stated that two weapons were used in the stabbing; Minister claimed to have used only one. We have held that the decision to grant a motion for new trial on newly discovered evidence rests in the sound discretion of the trial court. *Guthrie v. State,* 679 P.2d 278 (Okl. Cr.1984). In light of the substantial inconsistencies in Minister's claims, we cannot say the trial court abused its discretion in denying the motion. *See e.g. Rushing v. State,* 676 P.2d 842 (Okl.Cr.1984).

### IV.

### ISSUE RELATING TO THE EFFECTIVENESS OF TRIAL COUNSEL

Appellants also assert they were denied their Sixth Amendment right to effective

assistance of counsel through the errors and omissions committed by the two attorneys appointed to represent them. However, we have examined this issue under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and find this assignment of error is without merit.

V.

## ISSUES RELATING TO THE SENTENCING PHASE OF TRIAL

On July 13, 1981, the prosecuting attorney filed a Bill of Particulars announcing the State's intention to seek the death penalty. The prosecutor alleged in the Bill of Particulars that he would attempt to prove the following aggravating circumstances: (1) that the appellants were both convicted of felonies involving the use or threat of violence to the person; (2) that the murder was especially heinous, atrocious or cruel; (3) that the murder was committed by persons who were serving sentences of imprisonment on conviction of felonies; and, (4) the existence of a probability that the appellants would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, § 701.-12(1), (4), (6) and (7). At the end of the second stage of deliberations, the jury found all four aggravating circumstances had been sufficiently proven, and sentenced each of the appellants to death by lethal drug injection.

### A.

Appellants claim the death sentences cannot be permitted to stand, as the State failed to provide notice of the evidence it intended to use in support of the aggravating circumstances alleged. The Bill of Particulars filed by the State simply listed the aggravating circumstances in statutory language. This notice, appellants claim, was insufficient under the Oklahoma capital sentencing scheme.

It is true, as appellants claim, that our statute provides, "[o]nly such evi-

dence in aggravation as the state has made known to the defendant prior to his trial shall be admissible" in the sentencing proceeding. 21 O.S.1981, § 701.10. This statute, together with Okla. Const. art. II, § 20, contemplates that a defendant in a capital murder case be provided with a summary of the evidence intended to support the alleged aggravating circumstances, and a list of the witnesses the State might call. However, we have recently held that this latter requirement, although constitutional in nature, may be waived by failure to timely raise the constitutional violation. *See Standridge v. State*, 701 P.2d 761, 764, (Okl.Cr.1985). Accordingly, we likewise hold that failure to object to lack of notice, either at a pre-trial hearing or at the time the challenged evidence is offered, will result in waiver of this statutory right. *See e.g. Cartwright v. State*, 695 P.2d 548, 552 (Okl.Cr.1985). Absent an objection by the defense, we will not second guess defense counsel's decision to prepare for trial without formal notice of the evidence in aggravation. *Cf. Nuckols v. State*, 690 P.2d 463, 469 n. 3 (Okl.Cr.1984). Counsel for appellants failed to raise lack of notice either before or during trial and, therefore, this assignment of error is without merit.

### B.

Appellants' next claim deals with the admissibility of evidence used by the State in proving the aggravating circumstances alleged. Their chief complaint is that Deputy Warden Tim West was allowed to give his opinion, over defense objection, that both Green and Parker would probably commit future acts of violence against either prison officials or other inmates. Appellants maintain that West never personally observed any acts of violence committed by Green or Parker and, therefore, his opinion was inadmissible under 12 O.S. 1981, §§ 2701, 2602. We disagree.

Title 12 O.S.1981, § 2701, provides,

If the witness is not testifying as an expert, his testimony in the form of opin-

ions or inferences is limited to those opinions or inferences which are:

1. Rationally based on the perception of the witness; and

2. Helpful to determining a clear understanding of his testimony or to the determination of the fact in issue.

Subsection one of this statute must be read in conjunction with 12 O.S.1981, § 2602, which states:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the testimony of the witness himself. This rule is subject to the provisions of [section 2701] of this Code.

Appellants argue that West's opinion was not based on any personal knowledge or perception, as required by sections 2602 and 2701(1). They further argue the evidence was not helpful to a clear understanding either of West's testimony or a material issue in the case.

 Prior to passage of the Evidence Code in 1978, the common law rule prohibiting admission of opinions by lay witnesses was extremely restrictive. Under the former rule, the witness' testimony had to be based on the personal perception of the witness, and the opinion could not be given regarding a matter upon which the jury was equally competent to form an opinion. *See Colbert v. State,* 4 Okl.Cr. 500, 113 P. 558 (1910). The new rule, as announced by the Legislature, has substantially liberalized the admission requirements. Opinions by lay witnesses under the Evidence Code should be rejected *only* when they are not rationally based on the perception of the witness, or the opinion is superflous in the sense it would be of *no value* to the trier of fact. *See* Cleary et. al., *McCormick on Evidence,* § 11, pp. 27–29. If an opinion rationally based on the perception of the lay witness is helpful to the jury, it is within the discretion of the trial judge to admit the testimony. *Id.* at 29.

 We cannot say the trial court abused its discretion in this regard. Certainly, West's knowledge of the appellants' behavior was limited to official prison records. However, we have held a supervisor has "personal knowledge," within the meaning of section 2602, if the knowledge is acquired from records over which he or she is supervisor. *See e.g. Maytubby v. State,* 665 P.2d 849 (Okl.Cr.1983).[3] Furthermore, West's opinion was helpful in determining a material issue in the sentencing proceeding, that is, the probability these appellants would commit future acts of violence. We cannot say the trial court erred in its decision to admit this evidence.

 Appellants also claim other improper hearsay was admitted during the sentencing stage of trial. However, none of these alleged errors were met with an objection at trial and, accordingly, they will not be considered on appeal to this Court. *Orgill v. State,* 660 P.2d 649 (Okl.Cr.1983).

### C.

 Appellants raise four assignments of error challenging the instructions delivered in the second phase of trial. We note, however, that defense counsel failed to make specific objections on the grounds now asserted, and further, failed to file written requested instructions covering those issues. Accordingly, these issues have not been properly preserved for appellate review. *Wolf v. State,* 375 P.2d at 287. Furthermore, we have examined the allegations for fundamental error and find the instructions gave correct and sufficient guidance to the jury in its consideration of the sentence. *See Chaney v. State,* 612 P.2d 269, 279–80 (Okl.Cr.1980). *See also Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983).

### D.

The appellants next raise an issue of apparent first impression in this jurisdic-

---

**3.** We also held in *Maytubby v. State* that admission of this evidence does not constitute a violation of the appellants right to confront witnesses under either the Federal or the State constitutions. *Id.* at 851.

tion. Appellants argue that it was error to permit the jury to consider, as aggravating circumstances, that "[t]he murder was committed by a person while serving a sentence of imprisonment on conviction of a felony", and that "the defendant was previously convicted of a felony involving the use or threat of violence to the person." *See* 21 O.S.1981, § 701.12(1) and (6). Support is found for this argument in the United States Supreme Court's statement in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) that the sentencing procedure must "[guide] and [focus] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death." *Id.* at 274, 96 S.Ct. at 2957. This requirement is not fulfilled when the jury considers the same act or an indivisible course of conduct to be more than one aggravating circumstance. However, we disagree that this theory of "overlapping" has application under the facts of the case at bar.

Appellant relies principally on the Florida Supreme Court opinion in *Provence v. State*, 337 So.2d 783 (Fla.1976), *cert. denied*, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). In *Provence*, the jury found the existence of two aggravating circumstances under Florida law: (1) that the murder was committed in the commission of a robbery; and (2) that the crime was committed for pecuniary gain. *See* Fla.Stat.Ann., § 921.141(5)(d) and (f) (West). The Florida court noted that both aggravating circumstances referred to the *same aspect* of the defendant's crime. The Court then reasoned:

> Consequently, one who commits a capital crime in the course of a robbery will always begin with two aggravating circumstances against him while those who commit such a crime in the course of any other enumerated felony will not be similarly disadvantaged. Mindful that our decision in death penalty cases must result from more than a simple summing of aggravating and mitigating circumstances ... we believe that Provence's pecuniary motive at the time of the mur-

der constitutes only one factor which we must consider in this case.

*Id.* at 786. At least one other State has disallowed a combination of these aggravating circumstances in a capital case. *See Cook v. State*, 369 So.2d 1251, 1256 (Ala. 1978). Also disallowed has been the pairing of aggravating circumstances that the murder was committed to avoid or prevent lawful arrest, and that the murder was committed to disrupt and hinder the lawful exercise of any governmental function or enforcement of laws. *State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569, 587 (1979); *Francois v. State*, 407 So.2d 885 (Fla.1981). *Contra Engberg v. State*, 686 P.2d 541–554 (Wyo.1984).

■ Appellants argue that these same principles are applicable in this case, but we disagree. We note that the Florida Supreme Court rejected an identical claim in *Delap v. State*, 440 So.2d 1242 (Fla. 1983), in which the Court wrote:

> The defendant argues that there was a doubling-up of the same aggravating circumstance, as the trial judge found that the capital felony was committed by a person under sentence of imprisonment and that the defendant was previously convicted of another felony involving the use of violence. He relies upon the principles set forth in *Provence v. State*, 337 So.2d 783 (Fla.1976), *cert. denied*, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). In *Provence*, we held that the commission of a capital felony in the course of a robbery and the commission of a capital felony for pecuniary gain would constitute only one aggravating factor, since both aggravating factors referred to the same aspect of the defendant's crime. However, the aggravating factors of being under sentence of imprisonment and being previously convicted of another felony involving violence do not cover the same aspect of the defendant's criminal history. The defendant could be under a sentence of imprisonment without having been convicted of a felony involving violence. Also, a defendant could be convicted of a felony

involving violence without being under a sentence of imprisonment. These aggravating circumstances are separate, and including the two factors in the weighing process does not constitute a doubling of aggravating circumstances.

*Id.* at 1256. We find the well-reasoned approach of the Florida Court to be dispositive of this claim. Accordingly, this assignment of error is without merit.

### E.

■ Next, appellants claim that prosecutorial misconduct so permeated their trial that the judgment and sentence imposed on each appellant should be reversed or, alternatively, the death sentences should be modified. We disagree. We note that none of the alleged errors were met with a contemporaneous objection. This alleged error has not been properly preserved for review and, furthermore, we are unable to conclude that "their combined effect was so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings...." *Cobbs v. State*, 629 P.2d 368, 369 (Okl.Cr.1981). *See also Robison v. State, supra* 677 P.2d at 1080, 1087. This assignment of error is without merit.

### VI.

### MANDATORY SENTENCING REVIEW

■ Pursuant to 21 O.S.1981, § 701.-13(C), which was in effect at the time this

4. We are, of course, aware that the Legislature, in this last session, revised the statute, allowing this Court to remand death penalty cases for re-sentencing, if error is found in the second stage of trial, and reducing the scope of this Court's mandatory review. *See* 1985 Okla.Sess. Laws, ch. 265 (to be codified at 21 O.S.1985 Supp. 701.13). However, retroactive application of this new statute to those cases pending on appeal at the time of its passage would render this statute an *ex post facto* law under U.S. Const. art. I, § 10, cl. 1. The Supreme Court has stated that a procedural change which does not injuriously affect a substantial right to which an accused is entitled at the time of the offense is not *ex post facto* though retroactive; but it is otherwise if it does deprive him of a substantial right. *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed.2d 506 (1883); *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed.2d 216 (1925). In this case, the Legislature has taken away from this appellant a substantial right— the right of modification to life imprisonment for an appellant who suffered error in the sec-

appeal was filed,[4] this Court is charged with the obligation of making the following determinations in each capital case:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in this act; and

3. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant.

### A.

■ Turning to the first statutorily-required determination, we find that the verdicts of death were not imposed under the influence of passion or prejudice. The jury was instructed that it could not allow passion or prejudice to influence its verdict, and there is no indication in the record that the verdict was based on "passion, prejudice, or any other arbitrary factor." 21 O.S.1981, § 701.13(C).

### B.

We next consider whether sufficient evidence was adduced by the State to support each[5] aggravating circumstance alleged.[6]

ond stage of trial—and requires him to face the death penalty for a second time. It also deprives an appellant of the right to have this sentence modified due to disproportionality between appellant's offense and "the penalty imposed in similar cases, considering the crime and defendant." 21 O.S.1981, § 701.13(C)(3). Application of this new statute would, therefore, be unconstitutional. *Cf. Kring v. Missouri, supra* (old law, in effect at the time of the offense, provided that on a charge of first degree murder a guilty plea of second degree murder operated as an acquittal of first degree murder, even if the plea was later set aside; new law, passed after the offense, provided that if the plea was set aside, new trial could be had for first-degree murder, *held, ex post facto,* as the change deprived defendant of a substantial right.)

5. The appellants do not challenge the sufficiency of evidence supporting the aggravating cir-

Both appellants were found to have been "previously convicted of a felony involving the use or threat of violence to the person." 21 O.S.1981, § 701.12(1). In support of this allegation, evidence was introduced showing Green was convicted of Murder in the First Degree in 1974, and Parker had been convicted of two counts of Kidnapping, After Former Conviction of a Felony, and Escape from a Penal Institution, all in 1976.

Green's contention that insufficient evidence was presented in support of this aggravating circumstance avails him nothing. Green was convicted of Murder in the First Degree pursuant to 21 O.S.Supp.1973, § 701.1.[7]

■ The judgment and sentence admitted against Green does not reflect under which subdivision of the statute Green was convicted. However, it is clear that Murder in the First Degree, under that statute, was a crime involving the use or threat of violence to the person under any possible

scenario. Green's contention is without merit.

The same cannot be said regarding Parker's argument, however. The evidence presented against Parker in support of this aggravating circumstance consisted only of three judgment and sentences for two kidnapping convictions and one escape conviction. No evidence was introduced to explain the circumstances surrounding these crimes. In *Brewer v. State*, 650 P.2d 54 (Okl.Cr.1982), we explained the State's burden of proof regarding this aggravating circumstance. Judge Bussey wrote, for a unanimous Court, that

... the State is required to go beyond simple proof that a defendant in a capital case had prior felony convictions to establish the aggravating circumstance. The State must additionally prove that the prior felonies **involved the use or threat of violence to the person.** The fact that the prior felonies were committed and that the defendant committed them are properly and most easily prov-

cumstance that the "murder was committed by a person while serving a sentence of imprisonment on conviction of a felony." 21 O.S.1981, § 701.12(6).

6. Appellants also claim we have been interpreting these aggravating circumstances in an arbitrary manner, so as to render them unconstitutionally vague. We have previously disallowed this claim. *See Cartwright v. State*, 695 P.2d 548, 555 n. 6 (Okl.Cr.1985). *See also Nuckols v. State*, 690 P.2d 463, 471 n. 4 (Okl.Cr.1984).

7. This statute stated:

Homicide, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being, is murder in the first degree in the following cases:

1. When perpetrated against any peace officer, prosecuting attorney, corrections employee or fireman while engaged in the performance of his official duties;

2. When perpetrated by one committing or attempting to commit rape, kidnapping for the purpose of extortion, arson in the first degree, armed robbery or when death occurs following the sexual molestation of a child under the age of sixteen (16) years;

3. When perpetrated against any witness subpoenaed to testify at any preliminary hearing, trial or grand jury proceeding against the defendant who kills or procures the killing of

the witness, or when perpetrated against any human being while intending to kill such witnesses;

4. When perpetrated against the President or Vice President of the United States of America, any official in the line of succession to the Presidency of the United States of America, the Governor or Lieutenant Governor of this state, a judge of any appellate court or court of record of this state, or any person actively engaged in a campaign for the office of the Presidency or Vice Presidency of the United States of America;

5. When perpetrated by any person engaged in the pirating of an aircraft, train, bus or other commercial vehicle for hire which regularly transports passengers;

6. When perpetrated by a person who effects the death of a human being in exchange for money or any other thing of value, or by the person procuring the killing;

7. Murder by a person under a sentence of life imprisonment in the penitentiary;

8. When perpetrated against two or more persons arising out of the same transaction or occurrence or series of events closely related in time and location;

9. When perpetrated against a child while in violation of Section 843, Title 21 of the Oklahoma Statutes; and

10. Intentional murder by the unlawful and malicious use of a bomb or of any similar explosive.

21 O.S.Supp.1973, § 701.1.

en through the use of the judgment and sentence. However, the element that the felonies involved the use or threat of violence is not so easily and summarily proven. It is therefore necessary that the State present sufficient information concerning the prior felony convictions to support its contention.

The necessity for additional information concerning the nature of the prior convictions to be made known to the trier of fact is obviated by two examples. First we take the example of a person who, not unlike the appellant, stands to be sentenced for murder in the first degree with a prior conviction of rape. One might be led to assume from the face of the crime that rape necessarily involves the use or threat of violence to the victim. It is possible, however, that the rape conviction stemmed not from acts or threats of violence on the part of the defendant, but through sexual intercourse with one incapable of consent. In such a case, the rape conviction would not support the aggravating circumstance.

A second example could be that of a person who stands before the trier of fact in the capital sentencing stage with a prior conviction of murder in the second degree. Once again, as in the above example, the crime seems to imply on its face the use or threat of violence. However, it is possible that the murder conviction may have resulted from the fact that the defendant, while driving under the influence of intoxicants after having been previously convicted of driving under the influence of intoxicants, wrecked his automobile and caused the death of his passengers. The person caused the death of the passengers while in the commission of a felony (ie. driving while under the influence of intoxicants, second offense, See, 47 O.S.1981, § 11–902), thereby supporting a murder in the second degree conviction, but no one would

say that the crime involved the use or threat of violence to the person.

Thus, in many cases, to allege prior convictions, without more, could very well result in an erroneous finding by the trier of fact that previous felonies support the aggravating circumstance, when, in truth they do not. This would result in a gross miscarriage of justice. *Id.* at 62–63.

 We cannot characterize either kidnapping or escape as crimes which invariably involve the use or threat of violence to the person, as we can the murder conviction used to support the aggravating circumstance against Green. Our Oklahoma escape statute provides that "[a]ny person having been imprisoned awaiting charges or prisoner awaiting trial or having been sentenced to confinement with the Department of Corrections who escapes from such confinement, either while actually confined therein, or while permitted to be at large as a trusty, or while awaiting transportation thereto ..." is guilty of escape from a penal institution. 21 O.S.1981, § 443. We cannot say a conviction for this offense necessarily involves "use or threat of violence to the person." *Accord Lewis v. State*, 398 So.2d 432, 438 (Fla.1981). Furthermore, under Oklahoma kidnapping statutes, one may be convicted of kidnapping if the person kidnapped was under twelve years old, and consented to being held. *See* 21 O.S.1981, § 741(3).

 It is clear that the State failed to prove this aggravating circumstance, as it related to Parker. The Legislature requires us, pursuant to 21 O.S.1981, § 701.-13(E) to modify to life imprisonment those cases in which one or more of the aggravating circumstances were not sufficiently proven. *See Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983). Parker's sentence must, accordingly, be modified to life imprisonment.[8]

---

8. The *procedure* enunciated in *Brewer* were to be applied prospectively. *See Brewer, supra* at 63. However, appellant's complaint goes to the *sufficiency* of evidence proving the aggravating circumstance. It is our Statute, not the *Brewer* opinion, which requires the State to prove beyond a reasonable doubt that "[t]he defendant was previously convicted of a felony involving

## 2.

Next challenged is the aggravating circumstance that the murder "was especially heinous, atrocious, or cruel." 21 O.S.1981, § 701.12. This aggravating circumstance was properly applied to the facts of this case, and Green's [9] sentence of death will not be disturbed on this basis.

In this case, Green and Parker, for some unknown reason, accosted Mosier outside a row of cells with a butcher knife and homemade "sticker." The two men repeatedly stabbed their screaming and struggling victim, inflicting sixteen wounds to the chest and back. After the victim had fallen to their feet, Green used the butcher knife to slash Mosier's throat. The medical examiner testified during the penalty phase of trial that this murder was within the "top twenty" of three hundred performed by this doctor, considering the severity of the wounds and mutilation of the body.

Green claims that the suffering of the victim is the major factor to consider in reviewing this aggravating circumstance. We do not agree. We rejected a similar argument in *Nuckols v. State*, 690 P.2d at 462, in which Judge Brett wrote, for a unanimous Court, that:

> We explained the meaning of this aggravating circumstance in *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980), *rev'd* on other grounds, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), *modified*, 688 P.2d 342 (Okl.Cr.1984). In *Eddings* we adopted the definition given to a similar aggravating circumstance by the Florida Supreme Court in *State v. Dixon*, 283 So.2d 1 (Fla.1973):
>
> > [W]e feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and that

cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accomplished by such additional acts as to set the crime apart from the norm of capital felonies the conscienceless or pitiless crime, which is unnecessarily torturous to the victim.

616 P.2d at 1167–68. We have consistently adhered to this definition of "especially heinous, atrocious, or cruel." See *Stafford v. State*, 669 P.2d 285, 299 (Okl. Cr.1983); *Ake v. State*, 663 P.2d at 11; *Jones v. State*, 648 P.2d 1251, 1259 (Okl. Cr.1982).

∗　　∗　　∗　　∗　　∗　　∗

Even if we accepted appellant's claim [that the victim did not suffer], *Eddings* and subsequent cases make clear that suffering of the victim is not the major factor we consider regarding this aggravating circumstance ... [We have held] the "manner of killing" is a relevant consideration, as well as the circumstances surrounding the homicide ... *Stafford v. State*, 669 P.2d 285, 299 (Okl.Cr.1983). We also have examined the killer's attitute to learn if it was specially pitiless or cold. *Boutwell v. State*, 659 P.2d 322, 329 (Okl.Cr.1983); *Jones v. State*, 648 P.2d 1251, 1259 (Okl.Cr.1982).

 We first note that Green's assertion that his victim did not suffer is untenable. Mosier screamed with anguish as the two weapons were repeatedly rammed into his chest and back. Then, after he fell to the ground dying, Green savagely ripped his throat with a butcher knife. The manner of this killing, and Green's cold and pitiless attitude, as evidenced by his slashing the throat of his already mortally

---

the use or threat of violence to the person." 21 O.S.1981, § 701.12(1). *See also Brewer, supra,* at 62.

**9.** Since we are modifying Parker's death sentence, our discussion of the remaining aggravating circumstances will relate only to Green's sentence.

wounded victim, support the jury's finding of this aggravating circumstance.

### 3.

We further find that sufficient evidence was raised by the State to prove "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S.1981, § 701.12(7).

■ It is important to note that the trial judge, who, with the jury, heard all the evidence regarding this aggravating circumstance, wrote that "there is reason to believe [Green] is likely to kill in the future for the slightest of reasons. He is cunning and has no regard for human life. He will be a danger to all around him as long as he lives." *Report of Trial Judge,* p. 6. The record in this case shows that Green, although confined in a penal institution, continues to pose a threat to society, even among those within that institution. Evidence revealed Green had previously threatened prison officials. Furthermore, both Green's prior criminal history and the manner of this killing support the aggravating circumstance. *See Eddings v. State,* 616 P.2d at 1169; *Robison v. State,* 677 P.2d at 1080, 1088.

All of the aggravating circumstances as to appellant Green are sufficiently supported by the evidence.

### C.

Finally, we have compared the sentence assessed in this case with those previous capital cases affirmed[10] or modified[11] by this Court, and find the sentence for Green to be proportionate.

Accordingly, as to both appellants, the judgment of the jury convicting each appellant of Murder in the First Degree is AFFIRMED. The sentence of death by lethal injection for appellant Green is AFFIRMED. The sentence of death by lethal injection for appellant Parker, as previously noted, should be, and the same hereby is, MODIFIED to life imprisonment.

BRETT, J., concurs.

BUSSEY, J., concurring in part, dissenting in part.

**BUSSEY, Judge, concurring in part, dissenting in part:**

While I agree that appellant Green's sentence should be affirmed, I must dissent to the modification of appellant Parker's sentence for two reasons.

First, in *Brewer v. State,* supra, this Court clearly stated that the procedures enunciated therein were to be applied prospectively:

We therefore hold that the following procedure must be the procedure concerning the State's allegation of 21 O.S.1981, § 701.12(1) in this and all *future* capital cases ... *Id* at 63. (Emphasis added).

The trial in the instant case was conducted on September 16–21, 1981; whereas, *Brew-*

**10.** *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985); *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985); *Bowen v. State,* 55 O.B.J. 2520 (Okl.Cr.1985); *Stout v. State,* 693 P.2d 617 (Okl.Cr.1984); and *Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984); *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983); *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); and *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub nom., Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984).

**11.** *Kelly v. State,* 692 P.2d 563, (Okl.Cr.1984); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980); as *modified,* 688 P.2d 342 (Okl.Cr.1984); *Morgan v. State,* No. F–79–487 (Okl.Cr. Nov. 14, 1983); (Unpublished); *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482 (Okl.Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980).

*er* was decided on August 18, 1982. Therefore, *Brewer* is inapplicable to the instant case, and the State is not required to "additionally prove that the prior felonies involved the use or threat of violence to the person."

Second, even assuming that the State failed to prove one of the aggravating circumstances applied to appellant Parker, I am of the opinion that the death sentence should not be invalidated. In *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235, (1983), the United States Supreme Court upheld the sentence of death in a Georgia case where one of the aggravating circumstances, which the jury relied upon, was held to be unconstitutionally vague. The United States Supreme Court accepted the view of the Georgia Supreme Court and stated:

> We accept that court's view that the subsequent invalidation of one of several statutory aggravating circumstances does not automatically require reversal of the death penalty, having been assured that a death sentence will be set aside if the invalidation of an aggravating circumstance makes the penalty arbitrary or capricious.

Clearly, the death penalty in the instant case was not imposed arbitrarily. The appellants, both convicted felons, serving time in the penitentiary at the time of the slaying, viciously stabbed the victim sixteen (16) times, severely mutilating his body, and then ruthlessly slashed his throat.

Therefore, I am of the opinion that the sentence of death should be affirmed for both appellants.